**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

PATRICK HALEY and RANDAL REEP, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

DELTA AIRLINES, INC.,

*Defendant*

Civil Action No. 1:21-cv-01076-SEG

**Plaintiffs' Reply Memorandum in Support of Motion for Class Certification**

## Table of Contents

Introduction ........................................................................................1

Argument..............................................................................................2

I. Benjamin Best is a Proper Class Representative. .................................2

II. Both Classes Are Properly And Adequately Defined. ..........................4

A. The Damages Class Is Properly Defined. ..................................4

B. The Injunction Class Is Properly Defined.................................6

III. The Requirements of Rule 23(a) are Satisfied. ....................................7

IV. Common Issues Predominate For Both the Damages Class and the Injunction Class. ...................................................................8

A. Whether Class Members Provided Notice of Short-term Military Leave Will Be Based on Common Evidence. ..............9

B. Whether Short-Term Military Leaves are Comparable to Other Leaves Will Be Based on Generalized, Class-wide Evidence. ..................................................................14

C. Plaintiffs Have Sufficiently Articulated an Approach to Determine Damages on a Class-Wide Basis............................17

V. The Injunction Class satisfies the Requirements of Rule 23(b)(2). .....21

A. The Injunction Class Seeks Appropriate Injunctive Relief. .....21

B. The Request for Injunctive Relief is Proper. ............................22

C. Best Has Standing to Seek Injunctive Relief. ...........................24

D. The Injunction Class Exclusively Seeks Injunctive Relief.......24

Conclusion .........................................................................................25

## Table of Authorities

**Page(s)**

**Cases**

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
938 F.3d 1170 (11th Cir. 2019) ....................25

*Aziz v. City of Newark*,
No. CV 20-10309, 2022 WL 1156755 (D.N.J. Apr. 19, 2022)....................25

*Bailey v. Cumberland Cas. & Sur. Co.*,
180 F. App'x 862 (11th Cir. 2006)....................3

*Baker v. United Parcel Serv., Inc.*,
No. 2:21-CV-0114-TOR, 2023 WL 4355333 (E.D. Wash. July 5, 2023) ....................8

*Bates v. Leprino Foods Co.*,
No. 220-CV-00700-AWIBAM, 2022 WL 3371584 (E.D. Cal. Aug. 16, 2022) ....................2, 3

*Blair v. Rent-A-Ctr., Inc.*,
No. C 17-02335 WHA, 2018 WL 5728924 (N.D. Cal. Nov. 1, 2018) ....................4

*In re Blue Cross Blue Shield Antitrust Litig.*,
No. 2:13-CV-20000-RDP, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020) ....................24

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
238 F.R.D. 679 (S.D. Fla. 2006)....................5

*Bonner v. City of Prichard, Ala.*,
661 F.2d 1206 (11th Cir. 1981) ....................7

*Bontkowski v. Smith*,
305 F.3d 757 (7th Cir. 2002) ....................23

*Cap. Asset Rsch. Corp. v. Finnegan*,
216 F.3d 1268 (11th Cir. 2000) ....................................................................23

*Carpenter v. Davis*,
424 F.2d 257 (5th Cir. 1970) ........................................................................7

*Carter v. Diamondback Golf Club, Inc.*,
222 F. App'x 929 (11th Cir. 2007)..................................................................23

*Cherry v. Domestic Corp.*,
986 F.3d 1296 (11th Cir. 2021) ......................................................................6

*Clarkson v. Alaska Airlines, Inc.*,
59 F.4th 424 (9th Cir. 2023) ..........................................................................16

*Clarkson v. Alaska Airlines Inc.*,
No. 2:19-CV-0005-TOR, 2020 WL 4495278 (E.D. Wash. Aug. 4,
2020) .......................................................................................................8, 17

*Collins v. Quincy Bioscience, LLC*,
No. 19-CV-22864, 2020 WL 3268340 (S.D. Fla. Mar. 19, 2020) ......................24

*Connelly v. Hilton Grand Vacations Co., LLC*,
294 F.R.D. 574 (S.D. Cal. 2013) ....................................................................25

*Cox v. Cmty. Loans of Am., Inc.*,
No. 4:11-CV-177 CDL, 2014 WL 1216511 (M.D. Ga. Mar. 24,
2014) ...........................................................................................................25

*Ebert v. Gen. Mills, Inc.*,
823 F.3d 472 (8th Cir. 2016) ..........................................................................24

*Fishgold v. Sullivan Drydock & Repair Corp.*,
328 U.S. 275 (1946)........................................................................................11

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) .........................................................................18

*Grooms v. Dolgencorp, LLC*,
No. 1:17-CV-191-SA-DAS, 2019 WL 2342688 (N.D. Miss. June
3, 2019) .........................................................................................................10

*Holt Civic Club v. City of Tuscaloosa*,
439 U.S. 60 (1978)....................................................................................23

*Huntsman v. Sw. Airlines Co.*,
No. 19-CV-00083-PJH, 2021 WL 391300 (N.D. Cal. Feb. 3, 2021)..........*passim*

*Jacobs v. Quicken Loans, Inc.*,
No. 15-81386-CIV, 2017 WL 4838567 (S.D. Fla. Oct. 19, 2017)......................25

*Johansson v. Nelnet, Inc.*,
No. 4:20CV3069, 2022 WL 6232089 (D. Neb. July 21, 2022) ..........................23

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ...................................................................11, 17

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
571 F.3d 672 (7th Cir. 2009) ..........................................................................16

*Madden v. Midland Funding, LLC*,
237 F.Supp.3d 130 (S.D.N.Y. 2017) ................................................................24

*Miller v. Mercedes Benz*,
No. CV 06-05382ABC(JTLX), 2009 WL 1393488 (C.D. Cal. May
15, 2009) .............................................................................................................3

*Myrick v. City of Hoover, Ala.*,
69 F.4th 1309 (11th Cir. 2023) ...........................................................11, 14, 16

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
328 F.R.D. 255 (D. Alaska 2018).......................................................................4

*Pizarro v. Home Depot, Inc.*,
No. 1:18-CV-01566-WMR, 2020 WL 6939810 (N.D. Ga. Sept. 21,
2020) ................................................................................................................16

*Reese v. Army Fleet Support, LLC*,
No. 2:16-CV-227-TFM, 2018 WL 4214143 (M.D. Ala. Sept. 4,
2018) ................................................................................................................10

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) ............................................................................18

*Safaie v. City of Los Angeles*,
No. CV-193921-FMOPJWX, 2021 WL 4786677 (C.D. Cal. July 12, 2021) ....................24

*Scanlan v. Am. Airlines Grp., Inc.*,
567 F. Supp. 3d 521 (E.D. Pa. 2021) ....................5, 24

*Scanlan v. Am. Airlines Grp., Inc.*,
No. CV 18-4040, 2022 WL 1028038 (E.D. Pa. Apr. 6, 2022) ....................8

*Scanlan v. American Airlines Group, Inc.*,
No. CV 18-4040, 2022 WL 16636935 (E.D. Pa. Nov. 2, 2022) ....................17

*Scutieri v. Paige*,
808 F.2d 785 (11th Cir. 1987) ....................23

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
543 F.3d 597 (10th Cir. 2008) ....................21

*In re Telectronics Pacing Sys., Inc.*,
172 F.R.D. 271 (S.D. Ohio 1997) ....................2

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ....................16

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) ....................3

*United States v. Nevada*,
No. 3:09-CV-00314-LRH, 2012 WL 1517296 (D. Nev. Apr. 30, 2012) ....................14

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ....................11

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ....................22

*Vuyanich v. Republic Nat'l Bank of Dall.*,
82 F.R.D. 420 (N.D. Tex. 1979) ....................2, 3

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................24

*Yates v. Collier*,
868 F.3d 354 (5th Cir. 2017)....................22

**Statutes**

38 U.S.C. § 4312....................*passim*

38 U.S.C. § 4316....................*passim*

38 U.S.C. § 4317....................5

38 U.S.C. § 4323....................21

Ga. Code § 15-12-1.1....................15

**Other Authorities**

20 C.F.R. § 1002.85....................10

20 CFR § 1002.115(a)....................13

32 CFR § 104.6(a)(2)(i)(B)....................10

Fed. R. Civ. P. 23....................*passim*

Fed. R. Civ. P. 54....................23

Fed. R. Civ. P. 65....................21, 22

*Newberg on Class Actions* § 4:38....................24

## Index of Exhibits

Second Declaration of R. Joseph Barton with the following attachment:

Exhibit A: Email chain dated June 27, 2023 from R. Joseph Barton to Jason A. Washburn.

Second Declaration of Colin M. Downes with the following attachments:

Exhibit 9: Excerpts of the Deposition of Patrick Haley taken December 19, 2022 ("Haley Dep.");

Exhibit 10: Military Posting Guide for Delta Pilots produced by Plaintiffs in this litigation and bearing bates number PLAINTIFF_000490;

Exhibit 11: A comparison between versions of 32 C.F.R. § 104.6 effective March 1, 2016 to June 4, 2020 and June 5, 2020 [current], retrieved by Plaintiffs' counsel via Westlaw August 9, 2023.

## Introduction

The Complaint alleges a single claim that Delta Air Lines, Inc. ("Delta") violated USERRA § 4316(b)(1) by failing to provide pay-protection to pilots taking short-term military leave while pay-protecting other, comparable leaves—including jury duty, sick, bereavement, and vacation. Plaintiffs seek certification of two classes: a Damages Class under Rule 23(b)(3) and an Injunction Class under Rule 23(b)(2) (or, alternatively, 23(b)(3)). At least five district courts have certified nearly identical claims under Rule 23(b)(2) and/or (b)(3). Despite failing to cite a single case holding the contrary, Delta contends that that this claim is inherently unsuitable for class certification due to individualized liability and damages issues. Delta objects to the appointment of Best, but does not make any arguments why the requirements of Rule 23(a) are not met. Nor does Delta suggest that it would be prejudiced by his appointment. As to Rule 23(b)(3), Delta only challenges predominance, not superiority, and its arguments are based on a misreading of USERRA and a misunderstanding of the liability analysis under USERRA § 4316(b). For the Injunction Class, Delta does not address the elements of Rule 23(b)(2) but raises other arguments that mischaracterize the injunction and the relief sought. Like the other cases alleging similar claims, this claim is well-suited for class certification, and the Classes should be certified.

## Argument

### I. Benjamin Best is a Proper Class Representative.

Delta asserts that a non-party can only be *substituted* for a plaintiff class representative post-certification or appointed *in addition* to a plaintiff. Opp. at 8-9. But there is "no categorical rule" that bars substitution of a class representative before the class is certified. *Bates v. Leprino Foods Co.,* No. 220-CV-00700-AWIBAM, 2022 WL 3371584, at *3 (E.D. Cal. Aug. 16, 2022) (citing cases and allowing substitution); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997) (holding Rule 23 does not require class representatives to sue individually). Delta suggests the text of Rule 23 limits class representatives to "named plaintiffs." Opp. at 8. But Rule 23 refers to "representative parties," not plaintiffs. Fed. R. Civ. Pl 23(a)(3) & (4). Delta ignores that Rule 23(d) specifically allows "for the intervention of class members into class actions." *Vuyanich v. Republic Nat'l Bank of Dall.*, 82 F.R.D. 420, 436 (N.D. Tex. 1979). Rule 23 "(d)(2) [now (d)(1)(B)(iii)] empowers the court in any type of class action to encourage members of the class 'to intervene and present claims or defenses, or otherwise come into the action.'" *Id.* at 436 (permitting absent class members to intervene). Under Rule 23(d), "the Supreme Court and Fifth Circuit have allowed additional plaintiffs to represent a class when it appears that the named plaintiff

either does not satisfy one of the criteria of Rule 23(a) or is not as strong a representative" as he could be. *Id.* at 437. The Supreme Court has held that a member of a putative class can "enter the litigation" without filing a complaint or formally intervening. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977).

Delta cites *Miller v. Mercedes Benz,* No. CV 06-05382ABC(JTLX), 2009 WL 1393488, at *2 (C.D. Cal. May 15, 2009), where plaintiff's counsel proposed replacing the existing plaintiff, who was employed by plaintiff's counsel, with another representative. *Miller*, 2009 WL 1393488, at *2.[1] The *Miller* court provided no legal rationale explaining why absent class members could only be substituted but not initially appointed as a class representative. *Id. at* *2 n.2; *see Bates*, 2022 WL 3371584, at n.2 (distinguishing *Miller*). There is nothing improper nor any gamesmanship here. Mr. Best first contacted counsel for Plaintiff Haley on June 2, 2023 and only engaged them as counsel on June 8, 2023. Barton Decl. ¶¶ 2-3. Counsel promptly notified Delta of Plaintiffs' intent to offer him as a class representative and to allow Delta to take discovery to prevent any prejudice. *Id.* ¶ 4. Delta declined and does not claim prejudice. *Id.* at Ex. A; Opp. at 7-9.

[1] Delta also cites *Bailey v. Cumberland Cas. & Sur. Co.*, 180 F. App'x 862, 865 (11th Cir. 2006), but there the court affirmed a dismissal (not class certification) where the plaintiff's claims were barred by the statute of limitations and the magistrate judge did not allow plaintiff leave to substitute a new plaintiff.

Even if only a party may be appointed as a class representative, Best should be joined as a plaintiff without a separate motion. *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 268 (D. Alaska 2018) (explaining that appointing a non-plaintiff as a class representative does not require amendment of the pleadings); *Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2018 WL 5728924, at *4 (N.D. Cal. Nov. 1, 2018) (treating motion to certify class and appoint absent class member as motion to intervene and amend and granting same). If that is what is required, once joined, the requirements of Rule 23 can be analyzed.[2]

## II. Both Classes Are Properly And Adequately Defined.

### A. The Damages Class Is Properly Defined.

Delta argues that it is impossible to determine – based on the information in Delta's own records – whether Delta pilots took military leave of 30 days or fewer or more than 30 days. Opp. at 10-12. In making this argument, Delta appears to incorrectly conflate the *length of military service* with the *length of military leave* as reflected in Delta's data. *See id.* at 11-12. The Damages Class is explicitly defined by whether Delta's own data reflects that a pilot took military leave (i.e. leave from Delta) of 30 consecutive days or fewer. Mot. at 1. Another court addressing this issue

[2] If class certification is denied for this technical reason, Mr. Best could simply file a separate suit, move to consolidate both actions, and seek certification of the same classes. This approach would not serve the interests of judicial economy.

on a nearly identical claim held that this is an objective standard for which the class members "are readily ascertainable." *Scanlan v. Am. Airlines Grp., Inc.*, 567 F. Supp. 3d 521, 537 (E.D. Pa. 2021). As American had in *Scanlan*, Delta has already produced data that identifies those pilots. ECF No. 118-5 Ex. A at 3-6.

Delta also argues that there must be an administratively feasible method of identifying class members at certification. Opp. at 11-12. Delta relies on outdated and/or unpublished cases while ignoring binding and precedential Eleventh Circuit authority expressly rejecting such a requirement. *Compare id. with* Mem. at 6 n.3 (citing *Cherry v. Domestic Corp.*, 986 F.3d 1296 at 1304 (11th Cir. 2021)). Even if this were a requirement, Delta's data supplies the evidence: it shows 3,361 pilots who recorded short-term military leaves. ECF No. 118-5 Ex. A at ¶ 16.[3]

Finally, Delta references its predominance argument about the "inaccuracy"

[3] Delta argues that the class definition is "arbitrary" because there is no basis to distinguish short-term military leaves from other military leaves. Opp. at 11 n.4. As Delta's witness acknowledges, Delta distinguishes between short-term military leaves and longer military leaves for purposes of "what benefits are provided" and Delta's leave notification rules and procedures. Zawislak Dep. at 110:8-15, 111:5-9; Downes Decl. Ex. 10. USERRA also distinguishes between military leaves of 30 days or shorter and longer periods of leave in a variety of contexts. *E.g.* 38 U.S.C. §§ 4317(a)(2), 4312(e)(1)(A)(i), 4316(c)(2). Delta's sole case did not find that an arbitrary class definition alone was problematic, but rather that the class definition created class conflicts and defeated typicality and adequacy. *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 691 (S.D. Fla. 2006). Delta has made no such arguments here. *Infra* III.

and "incompleteness" of its own data. Opp. at 11. But predominance does not address ascertainability. *See Cherry*, 986 F.3d at 1304. The unpublished case on which Delta relies held that a class of individual purchasers of a weight loss pill were not ascertainable because defendant's sales data was limited to retailers and distributors. Opp. 12 (citing *Karhu v. Vital Pharms.*, Inc., 621 F. App'x 945 (11th Cir. 2015)). Not only is that holding inconsistent with *Cherry*, but Delta pilots who took leave to perform military service for which such leave was not recorded as military leave in Delta's data are not Damages Class members. *See* Mot. at 1.

### B. The Injunction Class Is Properly Defined.

Delta asserts that the Injunction Class "suffers from the same issues" as the Damages Class. Opp. at 12. But the Injunction Class is simply defined to include all current Delta pilots who are also servicemembers. ECF No. 118 at 1-2. As this Class does not depend on a pilot taking short-term military leave or Delta's leave records, none of Delta's arguments as to the Damages Class apply and this definition is objective. *Compare* Opp. at 12 *with* Mem. at 6. To the extent the Injunction Class is certified under Rule 23(b)(2), the binding law of this Circuit is that the members of such a class need not be ascertainable. Mem. at 6 n.4.[4]

[4] Delta ignores this binding precedent to cite dicta from a case not involving ascertainability. Opp. at 12 n.6 (citing *AA Suncoast Chiropractic Clinic, P.A. v.*

## III. The Requirements of Rule 23(a) are Satisfied.

Delta does not contest any of the requirements of Rule 23(a), other than merely asserting that "Plaintiffs' counsel make no showing whatsoever that Best satisfies any of the Rule 23(a) requirements." Opp. 9. But that simply ignores that Plaintiffs' opening brief addressed each requirement of Rule 23(a). Mem. at 7-13. Delta attacks Plaintiffs' explanation that Delta's affirmative defenses do not apply Best as "speculation." Opp. at 10. But Plaintiff's statement is based on the discovery. Mem. at 12 n.8. Delta's estoppel and unclean hands defenses apply only to parties to the *Sorenson* litigation (which Best is not). ECF No. 118-13 at Nos. 12 & 14; ECF No. 118-12 at ¶¶ 23, 27. Delta's laches defense applies to class members for whom Delta no longer has military leave data. ECF No. 118-13 at No. 13; ECF No. 118-12 at ¶ 25. Best appears in Delta's military leave data. Downes Decl. ¶ 2. Finally, Delta's bankruptcy release defense applies only to military leaves that began before April 30, 2007. ECF No. 118-12 at ¶ 21-22. This is before Best became a Delta employee in 2014 and before the start of the Damages Class. ECF No. 118-4 at ¶ 1. Mot. at 1. Thus, none of Delta's defenses apply to Best (and

---

*Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 (11th Cir. 2019)). Unless and until displaced by the *en banc* Eleventh Circuit, the Fifth Circuit's prior holding in *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) controls. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Delta does not even suggest any of them apply).

## IV. Common Issues Predominate For Both the Damages Class and the Injunction Class.

Delta argues that individualized issues respecting liability and damages defeat predominance. Opp. at 19-27.[5] But multiple courts considering similar claims have rejected such arguments and certified Rule 23(b)(3) classes. *Baker v. United Parcel Serv., Inc.*, No. 2:21-CV-0114-TOR, 2023 WL 4355333, at *5 (E.D. Wash. July 5, 2023) (holding common liability issues predominated); *Huntsman v. Sw. Airlines Co.*, No. 19-CV-00083-PJH, 2021 WL 391300, at *14 (N.D. Cal. Feb. 3, 2021) (finding predominance met because "plaintiff's USERRA claim turns on Southwest's generally applicable policies"); *Clarkson v. Alaska Airlines Inc.*, No. 2:19-CV-0005-TOR, 2020 WL 4495278, at *6 (E.D. Wash. Aug. 4, 2020) (holding common issues outweighed individual ones); *see Scanlan v. Am. Airlines Grp., Inc.*, No. CV 18-4040, 2022 WL 1028038, at *5 (E.D. Pa. Apr. 6, 2022). Delta does not cite a single case where a court found common issues did not predominate

---

[5] Delta purports to addresses the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) "together." Opp. at 13 n.7. But the requirements of commonality are low and satisfied by the existence of a challenged uniform employment policy. Mem. at 8. Delta does not dispute that the legal question of whether paid leave is a right or benefit under USERRA § 4316(b) and whether Delta maintains an employment policy under which short-term military leave is unpaid while other forms of leave are paid constitute common questions that satisfy Rule 23(a)(2). *Compare* Mem. at 8 *with* Opp. at 13-29.

in an action brought under USERRA § 4316(b).

For both Classes, the central, liability-driving facts pertain to the common employment policies that Delta maintains as to every pilot: rules governing the leaves from employment that they may take and the benefits afforded them when they do so. Mem. at 20. Delta does not dispute that these are common issues. Opp. at 13. None of Delta's four arguments suggest that common issues do not predominate over individual ones.

### A. Whether Class Members Provided Notice of Short-term Military Leave Will Be Based on Common Evidence.

Delta argues that the requirement that a servicemember or their officer give advance notice of military service to enjoy USERRA protection undermines predominance. Opp. at 18. But whether a pilot provided such notice can be shown by Delta's own notice records. Delta's witness testified that for all leaves of fewer than 30 days (including military leave), pilots report the leave through a Delta system called "iCrew." Zawislak Dep. at 94:5-17, 95:24-96:10; Downes Decl. Ex. 10. Delta does not explain why iCrew data will be inadequate to show whether a pilot provided advance notice of a period of short-term military leave.

Instead, Delta distorts USERRA to suggest pilots must provide notice of their leaves "as early as possible" in order to recover. Opp. at 14. But USERRA only requires "advance written or verbal notice," not notice as early as possible. 38

U.S.C. § 4312(a)(1). Delta does not cite a single case that applied an "early as possible" standard or denied USERRA liability on that basis. Opp. at 13-16. In Delta's case, plaintiff was only required to and did show that he "gave [defendant] advance notice of the service or that it was impossible or unreasonable to give advance notice of the service." *Reese v. Army Fleet Support, LLC*, No. 2:16-CV-227-TFM, 2018 WL 4214143, at *1 (M.D. Ala. Sept. 4, 2018), *aff'd*, 784 F. App'x 732 (11th Cir. 2019). This element requires a simple yes or no to the question: was there advance notice? *Id.; Grooms v. Dolgencorp, LLC*, No. 1:17-CV-191-SA-DAS, 2019 WL 2342688, at *3 (N.D. Miss. June 3, 2019) (same).

Delta cites a rescinded Department of Defense ("DOD") regulation directed to the "Secretaries of the Military Departments and the Commandant of the Coast Guard" to advise servicemembers the that DOD "strongly recommends" that advance notice be provided to civilian employers at least 30 days prior to departure of their military service "when it is feasible," 32 CFR § 104.6(a)(2)(i)(B); *see* 20 C.F.R. § 1002.85 (citing same). As this defunct regulation was not directed to nor requires anything of servicemembers, this recommendation cannot be construed to constrict servicemembers' USERRA rights. Downes Decl. at Ex. 11. Any interpretation purporting to constrict rights in § 4312(a)(1) would be unreasonable and not entitled to deference as USERRA (like its predecessors) is "to be liberally

construed for the benefit of" servicemembers. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); *Myrick v. City of Hoover, Ala.*, 69 F.4th 1309, 1318 (11th Cir. 2023) (applying *Fishgold*). As the plain text of § 4312 includes no early-as-possible or 30 days notice requirement, any ambiguity must be resolved in favor of, not against, servicemembers.

Delta's two cases do not suggest that this issue defeats predominance. First, the Eleventh Circuit *affirmed* a district court's finding that predominance was satisfied, applying the test of whether "the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). Applying that test, Delta's iCrew records will suffice to show whether notice was given for periods of military leave, and a certified class will not require the presentation of significant amounts of new evidence, other than production of iCrew data. Second, Delta cites a decision finding unjust enrichment claims required individualized inquiries into the "individualized equities attendant to each class member." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). But the notice issue does not require individualized inquiry into the equities of particular class members, only whether advance notice was given, which can be shown by Delta's records.

Delta argues its own pilot leave data is too incomplete and inaccurate to constitute a source of common proof of the duration of periods of short-term military leave. Opp. at 17. The key, but faulty, premise of Delta's argument is that its employees are on military leave any time they perform military service. Opp. at 16-17. Delta reasons its own military leave data cannot identify pilots who took short-term military leave because it is both overinclusive and underinclusive: it contends pilots sometimes use other forms of paid leave to perform military service, record only conflicts between military service and Delta employment as military leave (rather than all military service), or report military leave for dates they have no military service obligations. Opp. at 17-18 & n.10.

Contrary to Delta's erroneous assumption, USERRA § 4316(b) only applies to "a person who is absent from a position of employment by reason of service in the uniformed services." 38 U.S.C. § 4316(b)(1). In other words, military service must *make an employee absent from employment*. An employee who performs military service on a day when they are not scheduled to work is not absent from employment. For example, a person who works Monday through Friday is not absent from employment when they perform military drills on a Saturday. Similarly, Delta pilots are not on a leave of absence if they perform military service on a day when they have no duties to Delta (e.g. the pilot was on vacation

or pilot performs military service on a day when not scheduled to fly for Delta). In such cases, the pilot was not absent from employment under USERRA and whether that period is reflected in Delta's data is not relevant. As Delta notes, if a pilot did not report or provide notice of a period of military service to Delta, the pilot could not recover for that leave period. Opp. at 13-15. Indeed, leave periods where pilots used other leave (e.g. vacation) to perform military service or did not report military leave are not included in the Damages Class definition, which only includes claims for short-term military leave reflected in Delta's data. Mot. at 1.

As to the data's purported over-inclusiveness—i.e. that it reflects military leaves pilots reported without corresponding military service—Delta's argument is based solely on Plaintiff Reep's leave records. ECF No. 118-11 at § 20. That data shows that 88.1% of Reep's military leave days in Delta's records correspond to service days in his military records while 11.9% did not. *Id.*[6] An argument similar to Delta's was considered and rejected in another case under USERRA § 4316 where the discrepancies were more substantial. *Huntsman*, 2021 WL 391300, at *13 (certifying class). In *Huntsman*, the court rejected Southwest Airlines

[6] Delta did not ask Mr. Reep about this discrepancy at his deposition; however, as USERRA considers servicemembers to be on leave both while traveling to and from service and for a period of 8 hours after returning home (for leaves less than 31 days), this may explain this small a discrepancy. *See* 38 U.S.C. § 4312(e)(1)(A); 20 CFR § 1002.115(a).

argument that "a 23 percent error rate—inferred from one data point, i.e., one employee" would require class members "to present individualized evidence to support their military service." *Id.* Like Southwest, Delta extrapolates an "error rate" based on one employee that is less than half as large. Delta's own expert does not claim this is a statistically reliable sample. *See* Lee Rep. ¶¶ 20-21. As in *Huntsman,* this is insufficient to "discredit[ its] own payroll records" as "unreliable as common evidence." *Huntsman,* 2021 WL 391300, at *13.

### B. Whether Short-Term Military Leaves are Comparable to Other Leaves Will Be Based on Generalized, Class-wide Evidence.

Delta asserts that none of the three factors in the DOL regulation to evaluate comparability of a military leave period to other leaves—duration, purpose, and the ability of the employee to choose when to take the leave—can be analyzed on a class-wide basis. Opp. at 27. Yet, Delta does not actually argue that the purpose of leaves will require individualized inquiries. *Compare id* at 27-29 *with* Mem. at 20.

Delta relies on dicta in a footnote in *Myrick* to argue that whether a pilot volunteers for military duty is relevant. Opp. at 28. But USERRA expressly provides that "*voluntary service*[] in the uniformed services, shall not be a basis for denying protection of this chapter." 38 U.S.C. § 4312(h) (emphasis added); *United States v. Nevada*, No. 3:09-CV-00314-LRH, 2012 WL 1517296, at *8 (D. Nev.

Apr. 30, 2012) (granting motion in limine because volunteering for military service was as "a matter of law, 'immaterial'" to plaintiff's USERRA rights and benefits).

Delta asserts that is undisputed that pilots have flexibility to schedule their military service. Opp. at 29 & n.15, 16. But as Delta's own witness explained, when a pilot is ordered to military duty that duty is "compulsory," even if a pilot may have initially had the option of scheduling duty on specific days. Zawislak Dep. at 98:15-99:2. Plaintiff Haley testified that even nominally voluntary military duties take the form of being "voluntold": "a very strongly suggested request that you should be performing a duty or you should be involved in [a] training," on which the continuation of your career or maintenance of equipment qualification might be conditioned. Haley Dep. at 179:19-180; *see* ECF No. 123-2 at 77:16-779:18. To the extent that Delta argues that pilots have some flexibility when miliary duties occur (or whether to use leave), that is also true for comparable leaves. Zawislak Dep. at 58:20-24 (sick absences include scheduled surgeries), 85:5-20 (pilot determines start of bereavement leave); ECF No. 118-7 at 13-6 (same), 7-4 (pilots bid for vacation); Ga. Code § 15-12-1.1 (juror may defer service to another date by showing good cause). That characteristic applies generally to the leave category and does not require an analysis by class member or even by leave period. *See Huntsman*, 2021 WL 391300, at *6. Delta's suggestion that this factor

requires testimony from each class member's commander or Delta supervisor is belied by Delta's failure to identify any such person on its witness list. ECF No. 52

Delta argues that duration "will require an individualized analysis of each period of STML leave." Opp. at 28. While each military leave period has its own duration, the length of leave will be compared against the statistics of the comparator leaves, such as the longest period of paid "leave that [defendant] was willing to provide its employees." *Myrick*, 69 F.4th at 1320; *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 435 (9th Cir. 2023) (holding jury could find short-term military leaves of class of pilots were comparable in duration based on statistical evidence); *see Huntsman*, 2021 WL 391300, at *7 (rejecting similar argument on class certification). A jury would determine whether a particular length of military leave (e.g. 4 or fewer days) for all Class members was comparable to the duration for a specific comparator leave. This determination would not be specific to each class member, but rather based on the maximum duration of leave found to be comparable.[7] That will generate a class-wide answer to a common question.

[7] That this may ultimately result in some class members not recovering does not matter because "under established law from virtually every Circuit," a "class may include uninjured members." *Pizarro v. Home Depot, Inc.*, No. 1:18-CV-01566-WMR, 2020 WL 6939810, at *9 n.9 (N.D. Ga. Sept. 21, 2020) (citing cases); *see Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461-462 (2016) (declining to decertify class despite no mechanism to identify hundreds of uninjured members).

Finally, Delta asserts without citation that comparability is a "totality of the circumstances" analysis and that different mixes of facts on the three factors could generate different results that would require separate trials. Opp. at 28, 29 n.16. But as evidenced by the USERRA § 4316(b) cases decided on the merits (e.g. *Clarkson, Myrick and Waltermyer*), the analysis does not vary by class member,[8] *see Huntsman*, 2021 WL 391300, at *6, 14, nor does it require "separate trials" or substantial additional evidence. *See Klay*, 382 F.3d at 1255.

### C. Plaintiffs Have Sufficiently Articulated an Approach to Determine Damages on a Class-Wide Basis.

Delta argues that it is impossible to determine damages on a class-wide basis. Opp. at 24. Delta's real argument is that is impossible to determine for *any individual pilot* what damages they are entitled to for any of Delta's violations of USERRA § 4316(b). *Id.* at 25 (arguing "it is not possible to determine what a pilot would have been paid had she not taken a military leave" at all). That argument does not address predominance; it is a merits argument.

Contrary to Delta's suggestion, Plaintiffs are not required to detail every technique and calculation or address every possibility that may arise in calculating

---

[8] Delta cites *Scanlan v. American Airlines Group, Inc.*, No. CV 18-4040, 2022 WL 16636935 (E.D. Pa. Nov. 2, 2022). Opp. at 29 n.15. But like *Clarkson*, the evaluation of whether leaves were comparable was decided on a class-wide basis not an individual class member basis. *Scanlan*, 2022 WL 16636935, at *4.

damages. Mem. at 22. It suffices to specify a general model that can generate damages on a class-wide basis, even if specific calculation techniques or inputs may require further "development of the fact record on the merits." *Id.* (citing *Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 399 (N.D. Ga. 2019)). At class certification, plaintiffs only need to show "a reliable damages methodology exist[s], not the actual damages plaintiffs sustained." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893 (11th Cir. 2023); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). Ignoring Plaintiffs' cases, Delta relies solely on cases where the damages model was inconsistent with the plaintiff's theory of liability, not where it was underspecified. Opp. at 20, 23 (citing *Simmons v. Ford Motor Co.*, 592 F.Supp.3d 1262, 1291 (S.D. Fla. 2022) and *Brasher v. Allstate Indem. Co.*, No. 4:18-CV-00576-ACA, 2020 WL 4673259, at *12 (N.D. Ala. Aug. 12, 2020)). Delta does not argue that Plaintiffs' expert's approach to damages is inconsistent with Plaintiffs' theory of liability. Opp. at 23-27. A similar model was found to be sufficient in a similar case over defendant's opposition. *Huntsman*, 2021 WL 391300, at *14 (certifying class under Rule 23(b)(3)).

Here, Plaintiffs have proposed a reasonable damages approach that can be applied class-wide. Mem. at 20-24. Contrary to Delta's assertion, the damages analysis need not determine the amount that a pilot would have earned in a world

where they never performed military service. Opp. at 25. The Class is only entitled to the same non-seniority rights and benefits that Delta provides to employees who take leaves comparable to short-term military leave, no more and no less. 38 U.S.C. § 4316(b)(1)(B). Applying that standard, Plaintiffs' expert examines the comparator leave and affords a pilot with the same rights and benefits as a pilot who took that comparator leave instead of short-term military leave. ECF No. 118-5 at ¶ 28. Under the pilot CBA, those benefits vary by leave type. For example, under the current CBA pilots are entitled to five hours and fifteen minutes of pay for each day of unscheduled legal duty leave or the value of flights dropped or reserve availability missed for scheduled legal duty leave. ECF No. 118-7 ("CBA") at 13-3. And they are entitled to between 50 and 270 sick leave credit hours per year. *Id*. at 14-3, 14-5. Using a pilot's rate of pay, definite amounts can be calculated for a pilot who took a four-day short-term military leave depending on the comparator leave used. ECF No. 118-5 at ¶ 28.

Delta focuses on pilots who possibly provided notice of military leave before receiving their Delta schedule, and had no scheduled flights during their period of leave. Opp. at 25. Delta's pilot working agreement addresses this situation. ECF No. 123-5 at 74. A pilot on reserve status who knows of a legal duty leave in advance receives their five hours and fifteen minutes of pay and credit for each day

of such leave. CBA at 13-3. But a lineholder pilot who knows of the legal duty in advance will be scheduled around that legal duty. Zawislak Dep. at 29:8-24. As Dr. Cavazos explained, "if we have the scheduling data and find out that he or she was not scheduled at all… they would have been entitled to nothing." Cavazos Dep. at 73:22-25; *see supra* IV.A.

Delta relies solely on its expert to assert that there is no way to determine which flights were dropped or which periods of reserve availability were missed because of a short-term military leave. Opp. at 26 (citing Lee Rep. at 9-10). But Delta's own fact witness testified that Delta maintains records of pilot schedules as originally issued to pilots, before any modifications due to military leave. Zawislak Dep. at 177:17-178:4. Neither Delta nor its expert address why these records are insufficient to identify dropped flights and missed reserve availability periods for damages calculations. Instead, Delta merely speculates that *leave* data may not be 100% accurate due to possible intentional or unintentional differences in reporting of leave. Opp. at 26. But the *leave* data (reflecting dates of absence) is distinct from the *scheduling* data (reflecting specific Delta work assignments). As Dr. Cavazos explained, determining which leave periods resulted in lost flights or reserve unavailability requires overlaying the scheduling data (which has not yet been produced) with the leave data. Cavazos Rep. at ¶¶ 25, 28. To the extent that

the leave data is underinclusive because pilots never reported military service, those leave periods will not be included in the damages model (as they are non-compensable). *Supra* IV.A. To the extent the data is overinclusive, Delta has not shown any discrepancies are significant enough to render the leave data not useful as evidence an employee took military leave. *Id*. Nor does Delta explain why DOD records would be insufficient to correct any such discrepancies. *See* Mem. at 23.

## V. The Injunction Class satisfies the Requirements of Rule 23(b)(2).

Delta does not contend that the claim on behalf of the Injunction Class fails to meet either requirement of Rule 23(b)(2), but raises four other arguments. *Compare* Opp. at 32-35 *with* Mem. at 17-18. The injunctive and declaratory relief is proper and well-suited for class certification under Rule 23(b)(2).[9]

### A. The Injunction Class Seeks Appropriate Injunctive Relief.

Delta characterizes the relief sought by the Injunction Class as an "obey the law" injunction that does not meet the requirements of Rule 65(d). Opp. at 30. As Delta's case acknowledges, at class certification a plaintiff need not describe an injunction that satisfies Rule 65(d). *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El*

[9] USERRA requires the court to "use, its full equity powers… to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). And USERRA specifically empowers a court to "require the employer to comply with the provisions of [USERRA]." *Id*. § 4323(d)(1)(A).

*Paso*, 543 F.3d 597, 605 n.4 (10th Cir. 2008).[10] Instead, plaintiff must merely describe how the remedy "might satisfy Rule 65(d)" so the court could "conceive" of an appropriate injunction. *Id*. Arguments about the vagueness of a contemplated injunction "has no place in a class certification analysis." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 117 (E.D.N.Y. 2012) *see Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017) (holding "Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at class certification" and finding proposed order requiring prison to maintain "safe indoor apparent temperature" sufficient). Here, the relief would consist of a declaration that Delta's failure to pay-protect short-term military leave violates USERRA and an injunction requiring Delta to provide short-term military leave on the same basis that it provides to pilots who take leaves found to be comparable under § 4316(b). The specific injunction would (1) depend on what leaves the fact-finder decides are comparable and (2) what benefits are provided to pilots on the comparator leaves not provided for short-term military leaves. This satisfies Plaintiffs' burden.

### B. The Request for Injunctive Relief is Proper.

Delta argues that Best and the Injunction Class cannot seek an injunction

[10] As all of Delta's other cases address the Rule 65(d) rather than the requirements of Rule 23(b)(2), they are not relevant.

because that remedy is not in the Complaint's prayer for relief. Opp. at 32. A complaint merely needs to plead sufficient facts to state a claim, not remedies. *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *see Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978) (explaining omission in prayer for relief is not "a barrier to redress"). As Rule 54(c) entitles a party to any relief to which he is entitled if the party "has not demanded such relief in [its] pleadings," the Eleventh Circuit has repeatedly held relief cannot be denied merely because it was not sought in the complaint. *Carter v. Diamondback Golf Club, Inc.*, 222 F. App'x 929, 931 (11th Cir. 2007) (reversing denial of "declaratory and injunctive relief merely because [plaintiff] failed to specifically request such relief in his complaint"); *Cap. Asset Rsch. Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000) (affirming award of attorneys' fees although complaint did not request them); *Scutieri v. Paige*, 808 F.2d 785, 790 (11th Cir. 1987) (reversing denial of punitive damages complaint did not seek). As in *Finnegan*, the complaint here specifically requests other relief that "the Class is entitled pursuant to Rule 54(c)." ECF No 22 at 23.

By contrast, Delta conflates a claim with a remedy. Opp. at 32. In Delta's case, the court rejected plaintiffs to certify any different claim than the claim actually plead in the complaint (and one that had previously been denied leave to assert). *Johansson v. Nelnet, Inc.*, No. 4:20CV3069, 2022 WL 6232089, at *4 (D.

Neb. July 21, 2022). Here, the Injunction Class seeks equitable remedies based on the same claim (and same liability theory) pled in the Complaint. The only difference is this Class seeks prospective relief to remedy an ongoing practice.

### C. Best Has Standing to Seek Injunctive Relief.

Delta asserts *Plaintiffs Reep and Haley* lack standing to pursue prospective injunctive relief. Opp. at 33.[11] Best undisputedly has standing to seek such relief as he is both a current Delta pilot and servicemember. ECF No. 118-4. The Injunction Class consists only of current Delta pilots who are also current servicemembers.

### D. The Injunction Class Exclusively Seeks Injunctive Relief.

Delta asserts that that hybrid class certification – certification of a claim on behalf of both a Rule 23(b)(2) class and a (b)(3) class – is prohibited by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). Opp. at 33-34. But after *Dukes* "hybrid certification" remains "an available approach." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016); *see Newberg on Class Actions* § 4:38.[12]

---

[11] That is why the current complaint does not seek prospective relief.

[12] In addition to *Scanlan*, numerous courts in a variety of Circuits have certified hybrid classes or parallel Rule 23(b)(2) and (b)(3) classes after *Dukes*. *E.g. Safaie v. City of Los Angeles*, No. CV-193921-FMOPJWX, 2021 WL 4786677, at *5 (C.D. Cal. July 12, 2021); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2020 WL 8256366, at *11-12 (N.D. Ala. Nov. 30, 2020); *Madden v. Midland Funding, LLC*, 237 F.Supp.3d 130, 162 (S.D.N.Y. 2017); *see Collins v. Quincy Bioscience, LLC*, No. 19-CV-22864, 2020 WL 3268340, at *32

"Injunction classes can go forward under Rule 23(b)(2); damages classes must satisfy Rule 23(b)(3)." *AA Suncoast Chiropractic Clinic*, 938 F.3d at 1174 (citing *Dukes*, 564 U.S. at 363). That is precisely what is proposed for the Injunction Class, which only seeks a declaration and injunction and includes servicemember pilots who may not have taken military leave yet and thus have no damages. Mem. at 16.[13] The fact that certification is also sought for a Class of servicemembers who have damages does not bar certification of a separate class solely for injunctive relief under Rule 23(b)(2).

**Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted.

---

(S.D. Fla. Mar. 19, 2020) (recommending certification of a hybrid class). Contrary to Delta's, the court in *Aziz v. City of Newark*, No. CV 20-10309, 2022 WL 1156755, at *4 (D.N.J. Apr. 19, 2022) did not reject hybrid certification, but rather a Rule 23(b)(2) class that only sought damages.

[13] By contrast, all of Delta's cases involved attempts to seek damages through a (b)(2) class. *See Jacobs v. Quicken Loans, Inc.*, No. 15-81386-CIV, 2017 WL 4838567, at *4 (S.D. Fla. Oct. 19, 2017); *Cox v. Cmty. Loans of Am., Inc.*, No. 4:11-CV-177 CDL, 2014 WL 1216511, at *12 (M.D. Ga. Mar. 24, 2014); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013).

Dated: August 11, 2023

Respectfully submitted,

*/s/ Colin M. Downes*
Colin M. Downes*
R. Joseph Barton*
BARTON & DOWNES LLP
1633 Connecticut Ave., NW
Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
Email: colin@bartondownes.com
Email: jbarton@bartondownes.com

*/s/ Stephen J. Anderson*
Stephen J. Anderson
Georgia Bar No. 018325
Kenneth S. Nugent, P.C.
4227 Pleasant Hill Road
Building 11, Suite 300
Duluth GA 30096
Tel: (770) 820-0893
Email: sanderson@attorneykennugent.com

Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Tel: (212) 245-1000
Email: mscimone@outtengolden.com

Peter Romer-Friedman*
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 355-6364
Email: peter@prf-law.com

Robert Friedman*
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, D.C. 20006
Tel: (202) 888-1741
Email: robert@guptawessler.com

Matthew Z. Crotty*
RIVERSIDE LAW GROUP, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: mzc@riverside-law.com

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Email: Tjarrard@att.net

*Attorneys for Plaintiff Patrick Haley & Proposed Class Representative Benjamin Best*

*Admitted *pro hac vice*

*/s/ Crystal L. Matter*
Crystal L. Matter*
Matter Law, APC
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Tel: 916-735-7495
Email: crystal@matterlawapc.com

Andrew Joseph Coomes
Georgia Bar No. 184999
Law Office of A. Joseph Coomes, LLC
990 Hammond Drive, Suite 840
Atlanta, GA 30328
Tel: 404-285-1745
Email: ajc@jcoomeslaw.com

*Attorneys for Plaintiff Randal Reep & Proposed Class Representative Benjamin Best*

*Admitted *pro hac vice*

**Certificate of Compliance Pursuant to L.R. 7.1(D)**

The undersigned counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in L.R. 5.1(C).[14]

*/s/ Colin M. Downes*
Colin M. Downes*
BARTON & DOWNES LLP
1633 Connecticut Ave., NW
Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
Email: colin@bartondownes.com

[14] The operative local rules require that "counsel must certify that the brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B)." L.R. 7.1(D). This appears to be an error, as the font and point selections approved by the Court are set forth in Local Rule 5.1(C). Plaintiff has thus certified compliance with that provision of the Local Rules.