2023 WL 8648167
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Antonio ONATE, Jr., on behalf of himself and all others similarly situated, Plaintiffs,
v.
AHRC HEALTH CARE, INC., Defendants.

20-cv-8292 (AS)
|
Signed December 14, 2023

**Attorneys and Law Firms**

Brett Reed Gallaway, Jason Scott Giaimo, Luis Munoz, Lee Scott Shalov, McLaughlin and Stern, LLP, New York, NY, for Plaintiff Antonio Onate, Jr.

Brett Reed Gallaway, Jason Scott Giaimo, Luis Munoz, McLaughlin and Stern, LLP, New York, NY, for Plaintiffs Robert Barlow, Melissa Duncan, Charles Dandy, Alisha Anderson, Shefa Alaakoori, Theo Brown, Kenisha Osbourne, Teaner Arnold.

Brett Reed Gallaway, Jason Scott Giaimo, McLaughlin and Stern, LLP, New York, NY, for Plaintiffs Ciara Jones Best, Yany Ulloa, Jessica Registre.

Arthur J. Robb, Ashley Krystyna Thomas, Melissa Annabella Romain, Clifton Budd & DeMaria, LLP, New York, NY, for Defendant.

MEMORANDUM OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

***1** Antonio Onate, Jr., and 1,122 opt-in Plaintiffs bring this motion for class certification in connection with their claims against Defendant AHRC Health Care, Inc. (AHRC) under the New York Labor Law and its supporting regulations (NYLL), N.Y. Lab. Law § 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2. Plaintiffs seek certification of the following two classes:

- Hourly Employees Class: All current and former non-exempt hourly employees of AHRC (the Hourly Employees) in the State of New York at any time from the six years prior to the filing of the Complaint to the entry of judgment in this case excluding employees in the Home Health Department.

- Salaried Employees Class: All current and former salaried and overtime eligible employees of ARHC (the Salaried Employees) in the State of New York at any time from the six years prior to the filing of the Complaint to the entry of judgment in this case excluding employees in the Home Health Department.

Plaintiffs also seek appointment of: (1) Onate and opt-in Plaintiff Ciara Jones Best as the class representatives of the Salaried Employees Class, (2) opt-in Plaintiff Natia Guillouette and opt-in Plaintiff Roxanne Brazil as the class representatives of the Hourly Employees Class, and (3) McLaughlin & Stern, LLP (M&S) as class counsel. Dkt. 194. AHRC opposes and moves to strike certain documents from the record that Plaintiffs submitted in connection with this motion. Dkt. 201. For the following reasons, Plaintiffs' motion is GRANTED in part and DENIED in part. AHRC's motion is DENIED.

## BACKGROUND

### I. Factual Background

AHRC is a 501(c)(3) not-for-profit organization operating in New York City that provides programs and services to persons with intellectual and developmental disabilities. Dkt. 203-2 ¶¶ 2, 4. Onate was employed with AHRC from January 2014 to July 2018 as a Medicaid Service Coordinator. *Id.* ¶¶ 15–16. According to Plaintiffs, AHRC employed approximately 760 Salaried Employees and nearly 4,000 Hourly Employees between October 5, 2017, and October 5, 2020. Dkt. 196 ¶ 4.

Onate's position was originally "classified as exempt from overtime requirements," but his position was reclassified to "exempt, overtime eligible" around 2016. Dkt. 203-2 ¶¶ 17–18. According to AHRC, it "decided that this change would be necessary to comply with the new statutory salary requirements for maintaining exempt status." *Id.* AHRC claims that the "decision to reclassify

may not have been implemented as to Onate" because "Onate was never issued a pay rate notice informing him that he would become overtime eligible" and "he never received overtime pay at any point during his time with AHRC." Dkt. 201 at 7.

**II. Procedural History**

Onate sued AHRC in October 2020. Onate claims that AHRC violated the Fair Labor Standards Act (FLSA) by failing to pay minimum wages and overtime, the NYLL by failing to pay all straight and overtime wages to salaried employees and all overtime wages to hourly employees, and the Wage Theft Prevention Act by failing to provide required wage statements and notices.

***2** After the complaint was filed, eight former AHRC employees opted into the class and became party plaintiffs. Dkts. 58–61, 63, 66–67, 73. On January 5, 2023, Magistrate Judge Willis recommended that the Court grant Onate's motion for conditional certification of an opt-in class under the FLSA of all AHRC non-exempt salaried and hourly employees who were employed by AHRC on or after October 5, 2017, and who were not employees in the Home Health Department. Dkt. 142. The Court adopted the report and recommendation in full. Dkt. 146. 1,122 individuals have since opted into the class. Dkt. 196 ¶ 5.

Plaintiffs now seek class certification under Federal Rule of Civil Procedure 23 of their NYLL claims. Plaintiffs say that AHRC "approved and implemented a series of unlawful policies and practices" that deprived employees of earned wages. Dkt. 195 at 4. Plaintiffs identify four alleged policies and practices that they claim violate the NYLL:

- Both Salaried and Hourly Employees were subject to a rounding practice, in which AHRC's time clocks reduced the number of hours employees were paid for working.

- Both Salaried and Hourly Employees were subject to a meal policy, where meal breaks were automatically deducted even when employees worked during their meal breaks.

- Both Salaried and Hourly Employees were subject to an off-the-clock policy, where they were required to work before and after their scheduled shifts but were not compensated for their time.

- Salaried Employees were subject to an improper shift policy, where AHRC paid them according to their shifts, rather than based on when they clocked in or out of work.

*See* Dkt. 195 at 4–11. The parties submit evidence including declarations and deposition testimony of opt-in Plaintiffs and other AHRC employees, email correspondence between AHRC employees, time sheets of opt-in Plaintiffs, and wage statements of opt-in Plaintiffs. *See* Dkt. 196-1 to -50; 203-1 to -45.

**DISCUSSION**

**I. Class Certification**

Plaintiffs move for certification of an Hourly Employees Class and a Salaried Employees Class. AHRC opposes, arguing that "Onate and his various declarants all assert different kinds of claims, depending upon what their title was, where they worked, and who their individual supervisor was." Dkt. 201 at 1. For the following reasons, Plaintiffs' motion is granted in part and denied in part. The Court declines to certify the classes as to AHRC's alleged off-the-clock policy for the reasons stated in Section I.C.2. The Court certifies the two classes in all other respects.

A. Legal Standard

"A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Those prerequisites are a showing that: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "In addition, the district court must be satisfied that certification is appropriate under Rule 23(b)." *Roach*, 778 F.3d at 405. Here, the Court must

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

***3** "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

B. Rule 23(a) Requirements

*1. Numerosity*

Numerosity is presumed when the putative class has forty or more members. *See* *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, the proposed Salaried Employees Class has hundreds of members, and the proposed Hourly Employees Class has thousands of members. Dkt. 196 ¶ 4. AHRC does not provide any basis to overcome the presumption of numerosity. *See* Dkt. 201 at 12. The Court therefore finds that the numerosity requirement is satisfied.

*2. Commonality*

"Commonality" requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This does not mean merely that [the class members] have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, their "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* (quotation marks and alterations omitted).

Plaintiffs have met their burden by identifying multiple common issues of law and fact that are capable of classwide resolution. For example, the case raises common questions of fact related to the mechanics of AHRC's "timekeeping software and time clocks," which apply to all employees in the two proposed classes "regardless of the facility or department the Employee works out of and regardless of their job title." Dkt. 195 at 14 (citing Dkt. 196-31); *see also* 196-31 at 22:20–23:3, 23:19–24:15 (AHRC director testifying that Ultimate Time and Attendance software is used for all employees other than home care employees). Plaintiffs also argue that AHRC employees were subject to the same allegedly unlawful policies. Dkt. 195 at 14–16.

AHRC does not raise any arguments that commonality fails specific to the shift policy or off-the-clock policy. Instead, AHRC raises three main arguments, which concern only the rounding and meal-break policies. First, AHRC argues that the meal-break and rounding policies do not amount to a violation of any law. *See* Dkt. 201 at 14–17. It is true these policies may not be *per se* illegal. But Plaintiffs argue that the policies had the effect of undercompensating employees. This raises common questions including how exactly the policies operated, whether they led employees to perform uncompensated work, and whether AHRC had actual or constructive knowledge of that work. "The Court need not reach the merits of these common questions at the certification stage. It is enough that the policies or practices that serve as the basis for Plaintiffs' claims have been shown to apply uniformly to the putative class." *Perez v. Isabella Geriatric Ctr., Inc.*, 2016 WL 5719802, at *2 (S.D.N.Y. Sept. 30, 2016). For class certification, it is sufficient that Plaintiffs have demonstrated that the alleged violations "depend upon a common contention." *Wal-Mart Stores*, 564 U.S. at 350.

***4** Second, AHRC argues that Onate (and presumably the other Salaried Employees) do not have meal-break claims because they are "paid on a straight salary basis, such that [their] pay did not vary whether [they] worked through lunch or not." Dkt. 201 at 15. AHRC similarly argues throughout its briefing that "salaried overtime eligible" employees are "paid on a salary basis, meaning that their weekly pay was made in a pre-determined fixed amount, without regard to their actual hours of work." *Id.* at 9. This is contradicted by the record. As AHRC's own employees confirmed, salaried overtime eligible employees were scheduled to work either 35 or 40 hours per week and were paid for overtime if they worked more than their scheduled hours. *See, e.g.*, Dkt. 203-8 at 51:22–52:17. So the pay of a salaried employee could vary depending on whether they worked through their

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

unpaid lunch, and the reason why their pay would vary—that uncompensated work done during lunch breaks led to unpaid overtime—is common for all Salaried Employees.

Finally, AHRC argues that these are facially neutral policies and so it is the application of these policies that is being challenged. According to AHRC, this means that the class members would need to submit individualized proof "as to whether their individual supervisor knew of [or] should have known of the additional time" that a class member worked or proof that the individual reported their extra time and of "the individual supervisor's failure to approve the adjustment." Dkt. 201 at 15, 17. AHRC argues that this case is therefore like *Dukes*, where the Supreme Court made clear that Rule 23's commonality requirement is not met when plaintiffs challenge a policy that is not uniform across a company and instead depends on the discretion of individual supervisors. *See* 564 U.S. at 355. But the record does not substantiate AHRC's argument.

Plaintiffs submitted considerable evidence demonstrating that the rounding policy is a uniform, system-wide policy rather than the sporadic practice of individual supervisors. Indeed, the policy automatically applied to both Salaried and Hourly Employees, and Plaintiffs have submitted evidence that AHRC management was aware of the automatic rounding policy. *See* Dkt. 196-29 at 90:1–90:22. Plaintiffs also submitted timesheets and wage statements for various opt-in Plaintiffs demonstrating the impact of this rounding policy. *See* Dkt. 196-35 to -39. There is nothing suggesting that this rounding practice did (or even could) vary depending on an employee's supervisor. Unlike in *Dukes*, AHRC does not cite any evidence in the record to support its claim that "individual supervisors are given discretion over employment decisions," such as how to adjust an employee's hours to account for the rounding policy. Dkt. 201 at 17.

As to the meal break deductions, Plaintiffs provide evidence that this was a companywide practice. Specifically, Plaintiffs provide the affidavits of Onate and two dozen other opt-in Plaintiffs indicating that meal-break deductions did not vary based on an individual's supervisor and that employees were all regularly required to work through some or all of their unpaid meal breaks. *See, e.g.*, Dkts. 196-1 ¶ 6, 196-2 ¶ 6, 196-3 ¶ 6, 196-4 ¶ 6. Plaintiffs have also provided evidence that AHRC had actual or constructive knowledge of this problem, including 2014 email correspondence in which AHRC's assistant director acknowledges that "various" AHRC supervisors "continue to have employees that claim they do not take a lunch break or want to work through it." Dkt. 196-41 at 2. Similarly, in a 2016 email, an AHRC director described AHRC's "current practice" as one of " 'auto-deducting' for lunch." Dkt. 196-42 at 2.

Unlike in *Dukes*, AHRC does not cite any evidence in the record to support its claim that "individual supervisors are given discretion over employment decisions," such as how to adjust an employee's hours. Dkt. 201 at 17. To the extent that AHRC is relying on Sharon Fong's deposition testimony related to the meal break policy, AHRC's argument fails. Ms. Fong stated that AHRC's policy was that individuals working through lunch should inform their supervisor so the supervisor could make an adjustment to their timecard. Dkt. 203-8 at 56:10–15. Ms. Fong also stated that she "believe[s]" that "employees [are] informed of the process by which they should notify their supervisor, or anyone else, that they worked during a portion of their automatically deducted break." *Id.* at 58:15–19. But AHRC points to no evidence substantiating that testimony. For example, Ms. Fong admitted that these instructions were not included in the employee handbook and that there was no "form or other documentation that an employee could submit to their supervisor or anyone else, articulating that they worked during a portion of their automatically deducted meal break." *Id.* at 58:21–23. And Ms. Fong admitted that there were no "procedures in place to make sure that an employee does not perform any work-related duties during the designated meal breaks." *Id.* at 59:5–9. AHRC does not point to any other evidence, such as testimony of supervisors claiming they informed their employees about adjustments for unpaid work during lunch, or emails from employees to supervisors seeking adjustments of their time. Indeed, AHRC does not identify even one worker who had his or her hours adjusted. On this record, Ms. Fong's unsubstantiated deposition testimony cannot overcome Plaintiffs' substantial evidence indicating that the meal break policy did not depend on the discretion of individual supervisors.

***5** The Court therefore finds that the commonality requirement is satisfied.

### *3. Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Passman v. Peloton Interactive, Inc.*, 2023 WL 3195941, at *12 (S.D.N.Y. May 2, 2023) (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002)). In addition, it is "well recognized" that the "commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Robinson v. New York City Transit Auth.*, 2020 WL 5814189, at *6 (S.D.N.Y. Sept. 30, 2020) (internal quotations omitted).

Here, for substantially the same reasons that the commonality requirement is satisfied, the Court finds that Plaintiffs have demonstrated that their claims are typical of the class. As discussed above, the proposed class members used the same billing system and were subject to the same practices. And AHRC has not identified any differences that would defeat typicality. *See* *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011) (concluding that "[t]ypicality is satisfied despite differences in damages arising from a disparity in injuries among the class members" where "the named plaintiff as well as members of the proposed class all have similar claims arising from the same scheme" (internal quotation marks omitted)).

### *4. Adequacy*

Rule 23(a)(4) requires that the Class Representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "For named class representatives to be 'adequate' under Rule 23, '[t]wo factors generally inform [the inquiry]: (1) absence of conflict and (2) assurance of vigorous prosecution.' " *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019). "For this reason, '[t]he named plaintiffs in a class action cannot represent a class of whom they are not a part, and can represent a class of whom they are a part only to the extent of the interests they possess in common with members of the class.' " *Id.* (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17 (2d Cir. 1981)).

Plaintiffs request that the Court appoint Onate and Jones Best as class representatives of the Salaried Employees Class and appoint Guillouette and Brazil as class representatives of the Hourly Employees Class. These four proposed class representatives meet both adequacy factors. First, Plaintiffs have offered evidence that the proposed class representatives are members of their proposed class, and the Court does not identify any other conflict. *See* 196-17 (Guillouette Decl.), Dkt. 196-19 (Brazil Decl.), Dkt. 196-25 (Jones Best Decl.), Dkt. 196-28 (Onate Decl.). Second, the Court finds that Onate, Jones Best, Guillouette, and Brazil have been and will remain actively involved in this litigation. *See* Dkt. 195 at 20 n.9. And, as discussed below, Plaintiffs are represented by adequate counsel with experience litigating similar wage and hour class actions. *See* *id.* at 20, Dkt. 196 ¶ 9.

***6** AHRC does not offer any arguments to the contrary. AHRC's briefing does not mention Jones Best, Guillouette, or Brazil. In its statement of facts, AHRC claims that "Onate was classified as exempt from overtime requirements" at the time he was hired and that Onate "may not have been" reclassified when his position was reclassified in 2016. Dkt. 201 at 7. But regardless of whether Onate was classified as exempt, AHRC does not argue that Onate *was* exempt or otherwise falls outside the class definition. To the contrary, AHRC repeatedly refers to Onate as a "salaried overtime eligible" employee. *See* Dkt. 201 at 9, 10.

## C. Rule 23(b)(3) Requirements

Under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As explained below, the superiority requirement is satisfied, but the predominance requirement is satisfied only with respect to the shift policy, the rounding policy, and the meal break policy.

### *1. Superiority*

In determining whether this requirement is met, the Court

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

considers "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Plaintiffs have shown that a class action would be a superior method of resolving the claims here. There is no other pending litigation, this forum is convenient for the parties who are mostly located in New York, concentrating the litigation in this forum is desirable given that the events at issue took place in New York, and the Court does not anticipate any difficulties in managing the action. Plus, a class would be the most efficient and desirable way to handle this litigation given the significant number of potential plaintiffs, the common and overlapping issues, and the relatively small amount that each individual seeks to recover. *See* *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 423 (S.D.N.Y. 2013) (finding superiority in part because for a single employee "the impetus to sue an employer for what might constitute a small economic return is minimal"); *see also* *Meyer v. U.S. Tennis Ass'n*, 297 F.R.D. 75, 89 (S.D.N.Y. 2013); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 339 (S.D.N.Y. 2010).

*2. Predominance*

"The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623). "The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (cleaned up).

Plaintiffs argue that they have satisfied the predominance requirement because their "claims revolve around common factual and legal themes and questions that can be resolved on a class-wide basis." Dkt. 195 at 21. According to Plaintiffs, the trial will focus on AHRC's alleged policies, which similarly impacted all Salaried Employees or Hourly Employees. *Id.* AHRC argues that Plaintiffs have failed to demonstrate predominance "for all of the same reasons that plaintiffs have failed to demonstrate commonality and typicality"—namely, that for each class member, "liability will turn on whether their individual supervisor knew or should have known of their additional working hours." Dkt. 201 at 21–22.

*a. Shift Policy and Rounding Policy*

***7** The Court finds that Plaintiffs have met their burden of demonstrating that individualized inquiries will not predominate as to AHRC's shift and rounding policies. First, the issues of whether these policies exist and how they operate are subject to common proof and will raise common questions. Plaintiffs submitted declarations, wage records, and time sheets demonstrating that all non-exempt hourly and salaried workers are subject to the same rounding policy and all hourly employees were subject to the same shift policy. *See, e.g.*, Dkts. 203-8 at 89:7–90:19; 196-35 to -37. Moreover, the evidence demonstrates that Plaintiffs who clocked in before their shift or clocked out after were working during all of their on-the-clock time. *See, e.g.*, Dkts. 196-1 to -7. AHRC does not point to any evidence (or even argue) that employees clocked in before they started working. *See* *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 368 (S.D.N.Y. 2014) (finding that the record "does not indicate a significant likelihood that individualized factual inquiries into whether individual plaintiffs were working" during certain periods will predominate); *Morales v. Rochdale Vill., Inc.*, 2018 WL 4522084, at *15 (E.D.N.Y. Aug. 1, 2018), *report and recommendation adopted*, 2018 WL 4697271 (E.D.N.Y. Sept. 28, 2018) (finding that plaintiffs had made the requisite showing through "essentially unrebutted" declarations that "employees began working when they clocked in, and they stopped when they clocked out").

Second, the issue of whether these policies deprived employees of earned wages will be subject to common proof because the same time-keeping software is used for all employees within the two proposed classes. *See* Dkt. 196-31 at 22:24–24:15. In short, Plaintiffs claim that AHRC's UTA timekeeping system reflects the time an employee worked, but employees were often not compensated for all these hours because of AHRC's policies. *See* Dkt. 195 at 6–8. So damages for each employee can be calculated by comparing the employee's time records to their pay records. While this inevitably requires some individual review, any "arithmetical calculations based on payroll records and other documentary evidence" do not undermine Plaintiffs'

showing of predominance. *See Ramirez*, 39 F. Supp. 3d at 369.

On this record, the Court finds that the predominance requirement has been satisfied as to the shift policy and rounding policy. Whether any employee was deprived of wages because of these policies (and, if so, in what amount) can be determined based on common proof—namely, wage records and time sheets. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (finding predominance requirement met when the class members were "unified by common factual allegations" that defendants had a certain policy regarding their wages and "unified by a common legal theory—that these policies violated the NYLL"); *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 334 (S.D.N.Y. 2009) ("Here, common questions of liability clearly predominate over any individual inquiries; namely, whether Defendants' pay practices violated the NYLL overtime, minimum wage, and late payment provisions.").

To be sure, the Second Circuit has made clear that Rule 23(b)'s predominance requirement may not be met when the question of whether each individual member of the proposed class is even "*entitled* to overtime" presents "a complex, disputed issue, and its resolution turns on exemption, which in turn will require the district court to decide a number of subsidiary questions involving whether plaintiffs fall within" the statute's protections. *Myers*, 624 F.3d at 548. But AHRC does not argue that any of the proposed class members are not eligible for overtime under the NYLL or are otherwise exempt from the statute's coverage.

*b. Meal Break Policy*

***8** Plaintiffs have also met the predominance requirement as to the meal break policy. First, Plaintiffs provide sufficient evidence that there was a companywide policy of automatically deducting a lunch break from an employee's time, without verifying whether the employee worked through lunch. *See, e.g.*, Dkt. 196-42 at 2 (2016 email in which an AHRC director described AHRC's "current practice" as one of " 'auto-deducting' for lunch").

Second, Plaintiffs have demonstrated that there was a policy of having employees perform uncompensated work during lunch. While AHRC did not maintain written policies that employees were required to work during lunch, Plaintiffs contend that both Hourly and Salaried Employees worked during some or all of their lunch breaks. Dkt. 195 at 8–9. In support, Plaintiffs point to declarations from twenty-eight employees stating that they were all regularly required to work through some or all of their unpaid meal breaks. *See, e.g.*, Dkts. 196-1 to -28. Plaintiffs also point to the deposition testimony of additional opt-in Plaintiffs who were subjected to this policy. *See* Dkt. 195 at 8–11. Plaintiffs say that the testimony of these employees is representative of the class. *See* Dkt. 216 at 2; *see also Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (affirming award of wages to class based on testimony of 2.5% of workers). AHRC failed to identify a single employee that did not work during their meal breaks.

For this reason, AHRC's reliance on *Cornn v. United Parcel Serv., Inc.*, 2005 WL 2072091 (N.D. Cal. Aug. 26, 2005), is unavailing. There the court found that the plaintiff had failed to demonstrate "sufficient evidence of a class-wide practice that gives rise to liability." *Id.* at *2. The plaintiff submitted evidence of one class-wide practice: non-payment for time between punching in and the scheduled start time. But many class members indicated that they were not working during the uncompensated time. *See id.* at *5. Here, there is significant evidence showing that employees were performing uncompensated work during lunch. There is also nothing showing that even a single employee either did not work through lunch or was compensated for time worked.

Third, the issue of whether AHRC had actual or constructive knowledge of under-compensation resulting from the meal break policy is common to the class, and Plaintiffs have pointed to some common proof that they can use to establish AHRC's knowledge. *See Ramirez*, 39 F. Supp. 3d at 363 ("To establish liability under the NYLL on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." (cleaned up)). Plaintiffs point to 2014 email correspondence in which AHRC's assistant director acknowledges that "various" AHRC supervisors "continue to have employees that claim they do not take a lunch break or want to work through it." Dkt. 196-41 at 2. Plaintiffs also rely on an audit report from BKD LLP, which recommended that AHRC change its procedures from auto-deducting for lunch breaks to having employees "punch in and punch out for meal breaks to properly reflect actual time," *see* Dkt. 196-46 at 2. The jury could draw the inference that BKD's recommendation was based on an understanding

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

that AHRC's auto-deduction policy was not accounting for time employees were working during lunch. These documents show that there is common proof that may be used to demonstrate AHRC's knowledge and contradict AHRC's naked assertion that liability will "turn on whether [an] individual['s] supervisor knew or should have known of their additional working hours." Dkt. 201 at 20, 22.

***9** Admittedly, damages may raise some individualized questions. To be sure, "it is well-settled that when an employer fails to keep complete records of hours, employees may prove their hours through representative testimony." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 168 (S.D.N.Y. 2014). But none of the opt-in Plaintiffs estimates how much uncompensated time they worked per week, so it is not clear whether some subset of Plaintiffs is representative of the broader class on this issue. *See, e.g.*, Dkts. 196-12 ¶ 9, 196-13 ¶ 11, 196-15 ¶ 10 (declarations stating that the plaintiff "regularly worked during all or a portion of [his or her] meal period"). Nevertheless, the Court finds that this is not sufficient to defeat class certification in light of the common issues raised by the Plaintiffs. "[D]amages questions should be considered at the certification stage when weighing predominance issues," but that does not mean "that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis." *Roach*, 778 F.3d at 407–08 (reaffirming Second Circuit case law holding that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)" (internal quotations omitted)); *see also, e.g.*, *Lawrence v. NYC Medical Practice, P.C.*, 2021 WL 2026229, at *11 (S.D.N.Y. May 20, 2021) (granting class certification of off-the-clock claims, reasoning that "the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, are inevitable and do not defeat the predominance requirement" (cleaned up)); *Perez*, 2016 WL 5719802, at *4 (certifying NYLL class despite the fact that the "calculation of damages for unpaid off-the-clock or meal break time may prove more complicated" than damages from unpaid on-the-clock time).

*c. Off-the-clock Policy*

As to the alleged practice of employees working off the clock, the Court finds that Plaintiffs have not met their burden of showing that common issues will predominate over individualized ones. According to Plaintiffs, AHRC employees were required to work off-the-clock, either before they clocked in for a scheduled shift or after they clocked out of one. *See* Dkt. 195 at 10. Plaintiffs do not argue that AHRC had any stated policy that employees were required to work before clocking in or after clocking out. Instead, they claim that the evidence shows that this was a companywide practice that was common to both Salaried and Hourly Employees. *Id.* But Plaintiffs' own evidence demonstrates that the off-the-clock policy will present predominately individualized questions that will need to be decided based on individualized facts.

For one thing, Plaintiffs have not shown that this was a uniform, companywide policy. Indeed, many Plaintiffs were not subject to an off-the-clock requirement at all. Of the 28 Plaintiffs who submitted declarations in support of the motion for class certification, only around half stated that they performed work off the clock. *See* Dkts. 196-8, -9, -10, -11, -12, -16, -17, -19, -20, -22, -23, -25, -27, -28. And of the Plaintiffs who did work off-the-clock, their experiences also varied, further suggesting that this was not a uniform, companywide policy but rather depended heavily on individual managers. For example, Alisha Anderson said she was told during meetings not to punch in "more than seven minutes before" a scheduled shift and not to punch out more than "seven minutes after the shift." Dkt. 203-15 at 33:15–20. Theo Brown said no one at AHRC ever told him to perform work off-the-clock, but he chose to do so anyway. Dkt. 203-23 at 40:5–18. And Ciara Jones Best said she was told to work off-the-clock during three instances but also did so other times when she was not directed to. Dkt. 203-37 at 92:6–17.

In addition, the evidence submitted in connection with Plaintiffs' motion demonstrates significant variance between any individual's alleged damages related to the off-the-clock policy. For example, Brenda Chaparro-Ortiz claims that she would work for 30 minutes without clocking in approximately 2 or 3 days per week. Dkt. 196-9 ¶ 6. Glen Whelpley says he worked 90 minutes after clocking out approximately 3 days per week. Dkt. 196-11 ¶ 7. September Green alleges that she worked for 10-15 minutes before clocking in 3 to 4 times per week. Dkt. 196-20 ¶ 8. Unlike the shift and rounding policies, there is no common proof as to whether and how long each employee worked off the clock.

On this record, the Court finds that the off-the-clock policy presents predominately individualized questions: Plaintiffs have not produced sufficient evidence that this was a companywide practice and those who were subjected to the policy were all harmed to different

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

degrees. In addition, Plaintiffs have presented no evidence demonstrating that either liability or damages can be demonstrated based on classwide proof.

***10** Accordingly, the Court declines to certify Plaintiffs' proposed classes with respect to AHRC's off-the-clock policy. But, as already explained, the other three policies that Plaintiffs identify as allegedly violating the NYLL present predominately common questions and satisfy all of Rule 23's requirements. So the Court will certify the proposed classes with respect to those three policies. *See also* *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001) ("District courts should take full advantage of [Rule 23(c)(4)(A)] to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies.").

### 3. *Fail-Safe Class*

AHRC argues that the use of the word "non-exempt" in the proposed class definition creates an impermissible fail-safe class that violates Rule 23(b). The Court disagrees.

"A fail-safe class requires a court to decide the merits of individual class members' claims to determine class membership." *Nypl v. JP Morgan Chase & Co.*, 2022 WL 819771, at *9 (S.D.N.Y. Mar. 18, 2022). "[F]ail-safe classes tend to be defined in terms of a legal injury or by reference to a particular statute, regulation, or contract that has been allegedly violated or breached." *Garcia v. Execu|Search Grp., LLC*, 2019 WL 689084, at *2 (S.D.N.Y. Feb. 19, 2019) (internal quotation marks omitted). For example, a class defined as all employees who did not receive "the proper minimum wage for all the hours that they worked" would be a fail-safe class. *See Bondi v. New Rochelle Hotel Assocs.*, 2018 WL 7246962, at *12 (S.D.N.Y. Dec. 7, 2018), *report and recommendation adopted*, 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019). "Courts in this circuit typically refuse to certify fail-safe classes unless the fail-safe aspect can be overcome by redefining the class or some other means." *Nypl*, 2022 WL 819771, at *9 (collecting cases).

The word "non-exempt" does not require the Court to determine whether AHRC violated the law to ascertain who is in the proposed class. Instead, "non-exempt" is based on whether an employee is eligible for overtime. *See* Dkt. 206 at 10 (explaining that the word "non-exempt" could be changed to "overtime eligible"). Accordingly, courts in this district often certify classes that refer to an employee's non-exempt status. *See, e.g.*, *Orellana v. One If By Land Rest. LLC*, 2020 WL 5768433, at *6 (S.D.N.Y. Sept. 27, 2020) (granting motion to certify certain "former and current non-exempt tipped employees"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 196 (S.D.N.Y. 2011) (granting motion to certify class of certain "non-exempt persons employed by Defendants"). Indeed, in every class action brought under the NYLL or any other protective statute, only individuals that fall within the statute's protection can be part of the class. It would make little sense to find a class impermissible simply because it was explicitly limited to only those who are eligible to sue under the relevant statute.

AHRC cites *Fillipo v. Anthem Companies, Inc.*, 2022 WL 18024818 (S.D. Ind. Dec. 30, 2022), in support of its argument that the proposed class is a fail-safe class. *Fillipo* is inapposite. There, the district court rejected the plaintiffs' request for conditional class certification. *Id.* at *2. The court explained that the plaintiffs' "theory of the case is that their collective is alike in having been misclassified," but they "cannot of course straight out define the collective as those '*misclassified* by Defendant as exempt outside salespersons," because that would "create an impermissible fail-safe class." *Id.* (emphasis in original). In *Fillipo*, it was the issue of misclassification, which begged the question of whether the defendant broke the law, that would have created a fail-safe class. Here, "non-exempt" does not beg that question. It is just shorthand for "eligible for overtime," and AHRC doesn't challenge that the proposed classes are comprised of overtime-eligible employees.

## D. Class Counsel

***11** Finally, M&S seeks to be appointed as class counsel. Federal Rule of Civil Procedure 23(g) states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing counsel, the Court "must consider" (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). M&S has met these factors.

First, M&S has undertaken extensive work to investigate Plaintiffs' claims. For example, M&S has "conferred extensively with Onate and examined his time and pay reports and other relevant records to substantiate Onate's claim for relief," "deposed a number of AHRC representatives," "reviewed tens of thousands of pages of documents," and "spoken with hundreds of Employees regarding their work experiences." Dkt. 196 ¶¶ 7–8. Second, the Court is persuaded that M&S has considerable experience litigating wage and hour claims. M&S has "secured tens of millions of dollars for employees asserting substantially similar claims to those at issue here." Dkt. 196 ¶ 9. M&S has also identified five other cases in this circuit where the firm was appointed lead counsel and received a substantial settlement. *Id.* And the principal attorneys on this matter have a combined 40 years of litigation experience. *Id.* Third, M&S has offered evidence that they have knowledge of the applicable law based on their extensive work on this and similar cases. *Id.* ¶ 10. Finally, M&S has declared that it "has devoted, and will continue to devote, substantial resources on behalf of the Classes" including "commit[ing] thousands of dollars in unreimbursed expenses towards the prosecution of this action and will continue to do so as the case progresses." *Id.* ¶ 11. ARHC provides no opposition. The Court therefore appoints M&S as class counsel.

**II. Motion to Strike**

AHRC moves to strike documents submitted with Plaintiffs' motion for class certification that reference AHRC's hiring of outside accountants in 2019, before this lawsuit was filed. AHRC says that these documents are being used in violation of Federal Rule of Evidence 407 because they show that "AHRC sought professional guidance on best practices after a prior, similar lawsuit was filed." Dkt. 201 at 23.

The documents at issue do not fall within the scope of Rule 407. Under Rule 407, a plaintiff cannot prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction based on "subsequent measures" by the defendant that "would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407. "[A] defendant's internal investigations and reviews might constitute the initial step toward identifying the need for particular remedial action, but they are not themselves excluded under Rule 407." 2 Weinstein's Federal Evidence § 407.02. "It is only if changes are implemented as a result of the tests that the goal of added safety is furthered; and, even then, it is only evidence of those changes that is precluded by the rule." *Id.* at § 407.06; *accord* *M.T. v. City of New York*, 325 F. Supp. 3d 487, 498 (S.D.N.Y. 2018).

As even AHRC concedes, the documents are not evidence of changes at AHRC, but rather "various finding[s] and recommendations made to AHRC by their outside accountants." Dkt. 201 at 23, *see also id.* at 24 ("[T]he exhibits Plaintiff cite and make reference to are documents of Defendant's internal email discussions ... regarding *potential* corrective improvements to the time keeping system and Defendant's auditor, BKD's, *recommendations* ... for the time and pay systems." (emphasis added)); Dkt. 210 at 3 ("Following the commencement of [a different putative class/collective action], AHRC NYC undertook a comprehensive, system-wide review of its time and pay practices. BKD was engaged to participate in this review."). Such evidence falls outside the scope of Rule 407, and so AHRC's motion is denied.

* * *

***12** One final note – three of the four proposed class representatives are not named plaintiffs in this lawsuit. AHRC has not raised any objection on this ground, and the parties' briefing does not address it. The Court does not detect any obvious procedural issue arising from this quirk, but if either side sees one, they should tell the Court within **fourteen days** of this decision. *See* *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 n.97 (S.D.N.Y. 2004) (finding that an individual "can serve as the class representative, even though he is not a named plaintiff" because "defendants have not identified, nor has a review of the case law revealed, a requirement that class representatives must sue individually"); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 380–81 (S.D.N.Y. 2000) ("The Court believes on reflection that it probably has the power to designate a Class Representative under Rule 23 who is not a Lead Plaintiff, simply because there is nothing in the statute which prevents it.").

**CONCLUSION**

Plaintiffs' motion is GRANTED in part and DENIED in part. AHRC's motion is DENIED.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 8648167

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.