**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PATRICK HALEY and RANDAL REEP, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant | Civil Action No. 1:21-cv-01076-SEG |

**DEFENDANT DELTA AIR LINES, INC.'S
SUPPLEMENTAL RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Defendant Delta Air Lines, Inc. ("Delta") submits this supplemental response in opposition to Plaintiffs' motion for class certification (the "Motion") pursuant to this Court's January 29, 2024 Order. (ECF 153.) As set forth in Delta's initial response to the Motion, Plaintiffs have failed to meet their burden of establishing the requirements of Federal Rule of Civil Procedure 23(a) because Proposed Class Representative Benjamin Best is a non-party not properly before the Court; he therefore cannot satisfy the requisite factors of typicality, adequacy, and commonality. (*See* ECF 123 at 6–9.)[1] Nevertheless, even if allowed to proceed, discovery confirmed that Best is both atypical and inadequate because Best blatantly ignores the requirements of Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.* ("USERRA") and deliberately fails to provide advance notice of his military leave to Delta, giving rise to defenses unique to Best, rendering him unable to state a claim pursuant to USERRA, and generating conflicts among the putative class. Likewise, Best's testimony reveals that no classwide proof could be used to determine whether any particular leave qualifies under Plaintiffs' definition of a short-term military leave ("STML") or whether advance notice was

[1] In a notice of supplemental authority (*see* ECF 147), Plaintiffs rely on *Onate v. AHRC Health Care, Inc.*, No. 20-CV-8292 (AS), 2023 WL 8648167, at *12 (S.D.N.Y. Dec. 14, 2023) to justify their attempt to elevate a non-plaintiff as the sole class representative. That case is inapposite because the plaintiff in *Onate* proposed including non-plaintiffs as class representatives ***in addition to*** the named plaintiff, like the cited cases in Plaintiffs' Motion (*see* ECF 123 at 7 n.2). Here, Plaintiffs propose only Best, a non-party, as the ***sole*** class representative.

provided for the leaves in question. For the reasons set forth in Delta's initial response, Plaintiffs face significant hurdles in establishing the predominance of common issues as required by Rule 23(b)(3); Best's testimony renders those hurdles insurmountable. Because Plaintiffs, and Best, have failed to meet their burden, the Motion must be denied.

## STATEMENT OF FACTS

Best is a current Delta pilot and participates in the Michigan Air National Guard. (Deposition of Benjamin Best, April 5, 2024, attached to the Declaration of James A. Washburn ("Washburn Decl.") as Exhibit 1 ("Best Dep."), 74:1–9; 101:10–12.) Since 2011, Best has had responsibility for planning training exercises, participating in drills, and flying outside of the drill periods. (*Id.* at 76:14–20; 77:2–5; 91:23–92:6; 94:15–20; 165:2–6.)

Best's instructions to report for duty come in the form of written orders, verbal orders, and/or training memoranda from the military. For active duty, Best receives written and/or verbal orders. (*Id.* at 95:5–6; 120:10–25.) Best does not have copies of all his written orders, and he testified that, in order to obtain written orders, he must physically go to his closest military base; the order cannot be e-mailed. (*Id.* at 97:5–10; 98:5–9.) While Best testified that he knows he has received many verbal orders throughout his tenure, Best also does not have a record of each verbal order, and he could only specifically remember receiving one verbal order in 2019. (*Id.* at

125:18–126:1; 159:15–25; 160:22–161:9; 174:15–17.) For inactive duty, Best receives a training memorandum. (*Id.* at 95:9–12; 96:7–9.) Best did not retain all of his training memoranda, and he testified that they are not maintained by the military in any database or other source. (*Id.* at 100:25–99:19.)

Best has considerable flexibility and control over his military schedule. He builds his flying schedule by submitting availability to the squadron, and the squadron puts together a schedule based on certain priorities. (*Id.* at 77:12–14; 78:18–79:19.) Once he receives the schedule, he is able to change it. (*Id.* at 81:21–82:5.) Best testified that he "essentially" negotiates with the military regarding whether he is going to fulfill duty. (*Id.* at 177:24–178:1.) Likewise, in his role as a planning officer for exercises, he is able to control and set the dates for some of his military duty. (*Id.* at 165:2–6; 187:2–5.) For exercises that are not mobilizations, Best testified that the military "technically can't force anybody to go." (*Id.* at 177:20–22.) As a result, Best negotiates with his commander with respect to his attendance at certain exercises. (*Id.* at 177:24–178:1.) Best also attends annual drills for training purposes, which are usually set by September for the next fiscal year; however, the drill schedule may change three to four times a year. (*Id.* at 85:11–86:2; 94:15–20.)

Best submits only a fraction of his military duty to Delta and purposefully does not provide notice of his need for military leave before Delta's monthly bid

period concludes each month. He testified that "there is no good reason to" submit all of his military duty to Delta as military leave. (*Id.* at 108:25–109:6.) Best's "practice" is to wait to notify Delta of military duty until after he receives his Delta schedule and then determines whether his military duty is in conflict with his Delta schedule. (*Id.* at 109:25–110:3.) Best has also swapped or dropped Delta flights in order to perform military duty. (*Id.* at 130:18–21.)

## ARGUMENT AND CITATION OF AUTHORITY

### I. Discovery Confirmed That Plaintiffs Cannot Meet Their Burden to Establish That Best Satisfies the Typicality and Adequacy Requirements of Rule 23(a).

To meet their burden on typicality, Plaintiffs must establish "a sufficient nexus between the legal claims of the named class representative and those individual class members." *J.M. by & through Lewis v. Crittenden*, 337 F.R.D. 434, 449 (N.D. Ga. 2019) (citations omitted). If a "major focus of the litigation will be on arguable defenses unique to the named plaintiff," then the class representative may not represent the class. *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 667 (N.D. Ga. 1975) (citation omitted). To meet their burden on adequacy, Plaintiffs must establish that Best will "fairly and adequately protect the interests of the class." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 418 (N.D. Ga 2017). "This requires a showing that no 'substantial conflicts of interest exist between the representatives and the class' and that 'the representatives will adequately prosecute

the action.'" *Id.* (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Additionally, Best must "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). Best's express admission that he deliberately fails to provide advance notice to Delta of his military duty renders him both atypical and inadequate to serve as a class representative.

Both USERRA and Delta's leave policies unambiguously require employees to provide notice of their military duty "as far in advance as is reasonable under the circumstances." 20 CFR § 1002.85(d); Nov. 28, 2023 Hr'g, Def. Ex. 1 Delta Flight Operations Manual, § 27.5.3.1.1 ("When a pilot becomes aware of a military obligation, notification should be given as soon as the requirement for duty is known. This allows Delta to better serve the pilot's needs and optimizes Crew Scheduling/Crew Resources functions while complying with USERRA."). Despite this requirement, Best does not notify Delta of his military duty unless he concludes that such duty would conflict with his Delta schedule (*i.e.*, after the bidding process) and/or until he believes that the military duty will be funded (*i.e.*, whether the duty will occur). (Best Dep., 109:25–110:3 ("My practice is once I recognize that I need to perform a duty that's going to conflict with my work and that I require a day off,

then I notify them"); 112:22–113:4; 122:16–123:2.) In other words, Best intentionally does not provide advance notice, despite being able to do so.

Because Best does not provide advance notice, Delta has a defense to Plaintiffs' USERRA claim that, based on the evidence presented thus far, is unique to Best.[2] *See Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668 (M.D. Fla. 2000) (finding plaintiffs' claim atypical based on a unique defense and denying class certification because "[t]ypicality is not present if the class representatives are subject to unique defenses that could be central to the litigation"). In addition, Best's failure to state a claim under USERRA (the only cause of action asserted) further renders him atypical. *See Kirts v. Green Bullion Fin. Servs., LLC*, No. 10-20312-CIV, 2010 WL 3184382, at *9 (S.D. Fla. Aug. 3, 2010) (denying class certification because named plaintiffs could not prove their own claims, and, thus, did not satisfy typicality requirement); *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 499 (N.D. Ga. 2006) (finding plaintiff not typical class representative because "[h]e will be unable to prove the claims of absent class members") (citation omitted).

Likewise, Best's disregard for the notice requirement set forth in USERRA and Delta's policies makes him inadequate to protect the interests of the class

[2] There is no way for Delta or this Court to know whether other putative class members also deliberately violate the advance notice requirement without asking the putative class members one-by-one. Accordingly, to the extent this behavior might be considered typical, it would generate significant predominance issues that would independently preclude class certification.

because it generates conflicts among the putative class members. More specifically, Best's positions generate conflicts among the class because his practice of not providing Delta with "pre-posting" notice artificially narrows the scope of the putative class. Best purports to represent a class of pilots who took STML only "as reflected by Delta's military leave data." (*See* ECF 118 at 1.) Such a narrowed definition does not adequately protect the interests of pilots who took STML but which does not appear in, or is not compensable as reflected in, Delta's data because, for example, they sufficiently notified Delta in advance of the bid period to avoid a conflict in scheduling and their schedules were built around military duty. These pilots will have significantly fewer instances of STMLs in Delta's data compensable under Plaintiffs' theory. The disparity between Best's interest in narrowing the class definition to rely only on Delta's data (perhaps to overcome the issues with his inconsistent records and reporting) and the interest of other pilots who take STML which does not show up in, or is not compensable as reflected in, Delta's data does not justify the departure from individual litigation and renders Best inadequate. *See Valley Drug Co.*, 350 F.3d at 1189 ("If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate. . . . A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class.").

Best's express admission that he deliberately elects not to provide advance, "pre-posting" notice of his military duty to Delta renders him unable to satisfy the typicality and adequacy requirements of Rule 23(a); for this reason alone, the Court must deny Plaintiffs' Motion.[3]

## II. Discovery Confirmed That Class Certification Under Rule 23(b)(3) Should Be Denied Because Individualized Issues Predominate.

Delta's initial response to the Motion highlighted significant hurdles that prevent Plaintiffs from establishing the predominance of common issues; Best's testimony further highlights two hurdles: there is no classwide proof sufficient to establish whether advance notice was provided for any of the given leaves, nor is there classwide proof to determine which periods of military leave qualify as STML.

[3] In a notice of supplemental authority (*see* ECF 143), Plaintiffs rely on *Doe v. MG Freesites, Ltd.*, No. 7:21-CV-00220-LSC, 2023 WL 8792153, at *4 (N.D. Ala. Dec. 19, 2023) to support their arguments on ascertainability, typicality, predominance, and propriety of injunctive relief. Not only is that case factually inapposite, but also Plaintiffs mischaracterize the case. Here, unlike *Doe*, there is no "objective" way to identify who is in the class as Plaintiffs cannot identify common proof to show when each period of military leave begins and ends. *Id.* at *3–4, *14 (explaining "objective criteria" in the class definition could be used "to ascertain who belongs in the class," allows class members to self-identify, and makes it so common issues predominated). While *Doe* stated that mere "factual variation" does not render the class representative's claims atypical, *id.* at *6, if factual differences predominate, then typicality is defeated, *Hively*, 191 F.R.D. at 668 ("while typicality does not require a complete identity of claims, typicality may be defeated if factual differences dominate"). Finally, *Doe* does not address the injunctive relief that Plaintiffs seek, which, if granted, would ultimately result in the future payment of money—this type of relief has been held to be improper by *Wal-Mart v. Dukes,* 564 U.S. 338 (2011). (*See* ECF 123 at 33–35.)

The individualized analysis required to resolve these issues precludes a finding of predominance. *See Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1235 (11th Cir. 2000) (finding individual issues predominate when they require "highly case-specific factual issues") (citation omitted).

**A. Best's Testimony Proves That the Advance Notice Requirement Cannot be Established Using Generalized Proof.**

As set forth above, to be eligible for pay from Delta as a result of STML, Plaintiffs must prove that they have given sufficient advance notice of leave to Delta. (*See* ECF 123 at 14.) Best's testimony confirmed that he cannot meet this basic requirement, but it also revealed that this threshold inquiry requires an individualized analysis for ***each*** class member to demonstrate for ***each*** instance of STML: (1) when they received notice of service, and (2) that they thereafter provided Delta with sufficient advance notice of the leave *or* that such leave is statutorily excepted. (*Id.*) Neither Delta nor this Court can know whether advance notice was deliberately withheld without interviewing each putative class member to determine their practice of providing notice to Delta of military leave.

Furthermore, even among those well-intentioned individuals who did seek to adhere to the requirements of USERRA and Delta's leave policy, there is no documentation that would allow for classwide resolution of this issue. To the contrary, Best's testimony regarding the method and timing of how and when he receives notice from the military further highlights the individualized nature of this

inquiry and inability to determine these issues with common proof. Best receives written orders, verbal orders, and/or training memoranda from the military to report for duty. (*Id.* at 95:5–6; 95:9–12; 96:7–9; 120:16–25.) Best receives written and verbal orders *after* the period of military duty. For example, Best received a military order dated April 26, 2017, that required Best to be on duty on April 21, 2017. (*See* BEST_000176, attached to the Washburn Decl. as Exhibit 2; Best Dep., 157:4–159:14.) The order also notes that Best received verbal orders from the commander on April 25, 2017, which is again *after* the time for him to appear at duty. (*Id.*; *see also* BEST_000001, attached to the Washburn Decl. as Exhibit 3 (written order dated June 27, 2017 referencing verbal orders given June 26, 2017 for military duty June 16–24, 2017).) When Delta's counsel asked how he knew to appear for this duty and to take leave from Delta, Best responded: "That's a great question." (Best Dep., 159:3–4.) Accordingly, based on the record before the Court, it is not possible to determine when Best actually received notice for many periods of his military service throughout the class period. Even after walking through military orders and Delta data, Best could not identify when he received this (or any other) post-dated order, making an already individualized inquiry nearly impossible to untangle.[4]

---

[4] Plaintiffs also cannot rely on Delta's iCrew data as common proof of notice, *see* ECF at 126 at 9. First, the iCrew data is not complete because pilots can also give notice to Delta through verbal notification or the Military Notification Log. *See* Nov. 28, 2023 Hr'g, Def. Ex. 2. Second, iCrew only has data starting in 2018, well after the class period begins. (*See* DELTA_00018301, attached to the Washburn

**B. Best's Testimony Establishes That Plaintiffs Cannot Determine Whether a Leave Qualifies as STML Using Classwide Proof.**

Plaintiffs' claim is based solely on STML; consequently, Plaintiffs bear the burden of demonstrating that it is possible to determine which of each putative class member's "period of service" in the military is 30 days or less using classwide proof. (ECF 123 at 16–17.) Best's testimony and military records provide additional confirmation that Delta's military leave data does not allow for such proof.

It is undisputed that Best did not report the entirety of his military leaves and instead reported only segments of his military leave—in fact, Best testified that "there's no good reason to" submit the entirety of each period of military duty to Delta as military leave. (Best Dep., 108:25–109:6.) For example, in April and May 2017, Delta's data reflects four STMLs of two, seven, fourteen, and one day(s), respectively; according to Best's military records, however, these STMLs are actually part of one long term leave of 39 days. (*Id.* at 161:6–163:13.) This single example highlights the difficulty in determining whether a reported military leave actually constitutes an STML, and not segments of a long-term leave that would not be covered under Plaintiffs' class definition.[5]

---

Decl. as Exhibit 4.) Finally, in any event, the iCrew data would not reflect when the pilot received notice from the military of their orders (to allow an assessment of the reasonableness required under USERRA).

[5] Delta's expert contemplated this exact issue. (*See* ECF 123 at 17–19 & nn.10–11.)

In another example, Best took a military leave from June through July 2019, and Delta's data reflected this duty as two leaves: June 1, 2019 and June 2, 2019 to July 31, 2019. The underlying documents reveal a more complicated story, however. Best reported issues regarding this leave to the Department of Labor ("DOL"), and, according to the DOL, Best represented that he "was ***not*** on any leave status from June 1, 2019 to June 10, 2019." (DELTA_00018298, attached to Washburn Decl. as Exhibit 5 (emphasis added).) During the course of attempting to resolve the issues regarding this leave, Best submitted multiple military orders and a memorandum from his commander, which conflicted with each other and Delta's data in terms of the full scope of the leave, but consistently demonstrated that Best was on leave from June 1 to June 10, 2019 (despite his statement in the letter to the contrary). The original military order stated the duty was from May 30, 2019 to August 25, 2019. (DELTA_00018292, attached to Washburn Decl. as Exhibit 6.) The first modification order stated the duty was re-scheduled to May 30, 2019 to August 12, 2019. (DELTA_00018283, attached to Washburn Decl. as Exhibit 7.) The second modification order stated the duty was re-scheduled again to May 26, 2019 to August 13, 2019. (DELTA_00018296, attached to Washburn Decl. as Exhibit 8.) The third modification order stated the duty was re-scheduled again to May 26, 2019 to August 8, 2019. (DELTA_00018290, attached to Washburn Decl. as Exhibit 9.) In an attempt to resolve the discrepancy, Best submitted a memorandum from his

commanding officer which stated that Best was on active duty from June 1, 2019 to July 26, 2019 and on terminal leave from July 27, 2019 to August 8, 2019 when his orders ended. (DELTA_00018282, attached to Washburn Decl. as Exhibit 10.)[6] After five months of investigation and multiple orders and other documents submitted, no conclusion was reached with respect to the accuracy and dates of Best's military duty for this one particular military leave. (*See* Best Dep., 52:11–53:19; 59:16–24; 60:6–25.) In any event, each of the orders was inconsistent with Delta's leave data, which is what Plaintiffs would have the Court rely on to determine the identity and length of all STMLs for the class.

Put simply, the documents related to Best's leave confirm that there is no reliable documentation that can be used to resolve these questions. The written orders Best receives from the military are not reliable for this purpose because Best sometimes does not receive orders for the entire period of his military duty and/or does not have any record at all of many written or verbal orders. (*Id.* at 127:16–22.) Best's military flight logs are not reliable for this purpose because they only capture the times Best was actually flying and do not report time performing simulator training, or any other military duties. (*Id.* at 154:3–21.) Likewise, Best's Point

[6] When asked by Delta's counsel why the DOL stated Best was not on any leave status from June 1, 2019 to June 10, 2019 when all his military documents showed he was on leave status during that time he stated: "I believe that this is a typo on the letter if that's what you're asking." (Best Dep., 58:23–25.)

Credit Accounting and Reporting System ("PCARS") data from the military—purportedly a comprehensive record of all military duty—is not reliable for this purpose, because it conflicts with both Delta's leave data ***and*** Best's military flight logs. (*Compare* BEST_000031, attached to Washburn Decl. as Exhibit 11 (PCARS data showing military duty on December 6, 2023), *with* BEST_000263, attached to Washburn Decl. as Exhibit 12 (flight records showing Best flew on December 7, 2023).)[7] Moreover, for a variety of reasons, Delta's data has proven to be incomplete and inaccurate with respect to Best's military leave, as well as for Plaintiff Reep (*see* ECF 123, at 5, 18–19 & nn.11–12), such that there is no way to confirm that Delta's data reflects the actual dates of military service to discern which STMLs are compensable pursuant to Plaintiffs' class definition.[8]

In short, Plaintiffs cannot meet their burden of establishing that the crucial issues of the existence and length of military leaves can be established by classwide proof. Like the question of notice, the determination of which leaves fall within

[7] While Plaintiffs' counsel represents that PCARS data could be a solution to problems with generalized proof given the incompleteness and inaccuracy of Delta's data (*see, e.g.*, ECF 118-1 at 10), Best testified that when inconsistencies in PCARS and flight logs exist, "the flight time log is the correct one," Best Dep., 153:15–22.

[8] In a notice of supplemental authority (*see* ECF 169), Plaintiffs rely on *Lytle v. Nutramax Laboratories, Inc.*, 99 F.4th 557 (9th Cir. 2024) to try to resurrect their fatally flawed damages model. Here, unlike in *Lytle,* there is no data that can be used reliably in a damages calculation. Best's PCARS data, flight records, and Delta data conflict with each other and cannot be utilized to determine the length of STMLs through generalized proof.

Plaintiffs' own definition and the length of those leaves for damages calculations must be evaluated on an individual basis, and therefore a class cannot be certified.

## CONCLUSION

Because Plaintiffs have failed to establish *all* of the required factors outlined in Rule 23, Plaintiffs' Motion should be denied.[9]

[*signature on following page*]

[9] In addition, the Northern District of Illinois recently entered an order denying class certification in a parallel USERRA case because the court had "doubts about the merits of the underlying claims" given the various "[s]imilar cases [that] are percolating throughout the country" which "explain that the claims are fatally flawed." *White v. United Airlines, Inc. et al.*, No. 1:19-cv-00114, Order on Class Certification, ECF 127 (N.D. Ill. Mar. 24, 2024), attached to the Washburn Decl. as Exhibit 13 ("it is up in the air whether Plaintiff has a valid claim at all"). Here, as in *White* and the various parallel USERRA cases across the country, there are sufficient doubts as to the underlying merits of this case and as to whether Plaintiffs and Best have a valid claim at all in alleging military leave is comparable to jury duty, bereavement, and sick leave. ECF 123, at 27–29; *see also Scanlan v. American Airlines Grp., Inc.*, 638 F. Supp. 3d 453, 460 (E.D. Pa. 2022) (granting motion for summary judgment in favor of defendant-airline); *Synoracki v. Alaska Airlines, Inc.*, No. C18-1784RSL, 2022 WL 1746777, at *7 (W.D. Wash. 2022) (same); *Hoefert v. American Airlines, Inc.*, 438 F. Supp. 3d 724, 742 (N.D. Tex. 2020) (same). For this additional reason, the Court should deny Plaintiffs' Motion. *See, e.g.*, *Shepherd v. Pilgrim's Pride Corp.*, 2007 WL 781883, at *2 (N.D. Ga. Mar. 12, 2007) (explaining "there is sufficient doubt regarding the likelihood of success on the merits of [plaintiffs'] claims so as to justify addressing [summary judgment] prior to addressing class certification").

Respectfully submitted this 9th day of May, 2024.

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ James A. Washburn*
James A. Washburn
Georgia Bar No. 738845
Lindsey B. Mann
Georgia Bar No. 431819
Bianca N. DiBella
Georgia Bar No. 820341
600 Peachtree Street, N.E.
Suite 3000
Atlanta, Georgia 30308
T: (404) 885-3000
F: (404) 885-3900
james.washburn@troutman.com
lindsey.mann@troutman.com
bianca.dibella@troutman.com

***Attorneys for Defendant Delta Air Lines, Inc.***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1.

This 9th day of May, 2024.

*/s/ James A. Washburn*
James A. Washburn
Georgia Bar No. 738845

## CERTIFICATE OF SERVICE

This is to certify that I have this 9th day of May, 2024, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically serve notification of such filing to all counsel of record.

*/s/ James A. Washburn*
James A. Washburn
Georgia Bar No. 738845