**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PATRICK HALEY, RANDAL REEP, individually and BENJAMIN BEST, individually and on behalf of himself and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> DELTA AIRLINES, INC., <br><br> *Defendant* | Civil Action No. 1:21-cv-01076-SEG <br><br> **Plaintiffs' Memorandum in Support of Renewed Motion for Class Certification** |

## Table of Contents

Introduction ...............................................................................................1

Background ...............................................................................................1

Argument..................................................................................................2

I.      Overview of the Elements of the Proof Required for the Claims ...................3

II.     The Classes Are Properly Defined. ................................................4

III.    The Requirements of Rule 23(a) are Satisfied for Both Classes.....................5

      A.      Joinder of Members of Both Classes Would Be Impracticable............5

      B.      The Classes both Raise Common Questions of Law and Fact. ............5

      C.      The Claims and Defenses Are Typical of those of the Classes. ...........9

            1.      Mr. Best's Claims Are Typical of the Classes' Claims..............9

            2.      Delta Has No Unique Defenses Against Mr. Best....................10

      D.      Mr. Best and His Counsel Will Adequately Represent the
Classes. ...........................................................................11

            1.      Mr. Best is an Adequate Class Representative. ......................11

            2.      There Are No Intra-class Conflicts. ......................................12

            3.      Proposed Class Counsel Satisfy Rule 23(a)(4) and 23(g). .......13

IV.     The Requirements of Rule 23(b) are Satisfied for Both Classes....................14

      A.      The Claims of the Injunction Class Satisfy Rule 23(b)(2)..................15

             1.      Delta Has Acted on Grounds Applicable to the Class..............15

            2.      The Injunction Class Would Be Entitled to Final
Declaratory and Injunctive Relief.............................................16

B.      Both Classes Satisfy Rule 23(b)(3). ......................................................17

1.      Common Questions Predominate. ............................................18

2.      A Class is a Superior Method for Adjudicating this Claim. ......24

Conclusion ..................................................................................................25

ii

# Table of Authorities

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................2

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) ......................................................................9

*Baker v. United Parcel Service, Inc.*,
No. 2:21-cv-0114-TOR, 2023 WL 4355333 (E.D. Wash. July 5,
2023) ........................................................................................................13, 19

*Benjamin v. Oliver*,
800 F.Supp.3d 1314 (N.D. Ga. 2025)..............................................................6

*In re Blue Cross Blue Shield Antitrust Litig.*,
85 F.4th 1070 (11th Cir. 2023) .................................................................12, 14

*Brill v. AK Steel Corp.*,
No. 2:09-CV-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ....................22

*Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121 (9th Cir. 2017) ...........................24

*Carpenter v. Davis*,
424 F.2d 257 (5th Cir. 1970) .......................................................................4, 17

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) .....................................................................4, 20

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 630 (S.D. Fla. 2015)....................................................................10

*Cherry v. Dometic Corp.*,
986 F.3d 1296 (11th Cir. 2021) .....................................................................2, 4

*Chianne D. v. Weida*,
2024 WL 1743334 (M.D. Fla. Apr. 23, 2024)................................................16

*Chianne v. Harris*,
No. 3:23-cv-985-MMH-LLL, 2026 WL 32126 (M.D. Fla. Jan. 6, 2026) ........................................................................................16

*Clarkson v. Alaska Airlines, Inc.*,
59 F.4th 424 (9th Cir. 2023) ................................................................4, 7

*Clarkson v. Alaska Airlines Inc.*,
No. 2:19-CV-0005-TOR, 2020 WL 4495278 (E.D. Wash. Aug. 4, 2020) ...................................................................................6, 13, 19

*Cole v. City of Memphis*,
839 F.3d 530 (6th Cir. 2016) ..................................................................5

*Colonel Fin. Mgmt. Officer v. Austin*,
622 F.Supp.3d 1187 (M.D. Fla. Aug. 18, 2022) ...................................15

*Cooper v. S. Co.*,
390 F.3d 695 (11th Cir. 2004) ................................................................9

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ..........................................................5, 6

*Davis v. Mar-Jac Poultry, LLC*,
No. 6:18-cv-1433-LSC, 2024 WL 218510 (N.D. Ala. Jan. 19, 2024) ........................................................................................17

*Davis v. United Bank Corp. Ret. Plan Comm.*,
No. 5:24-cv-328-MTT, 2025 WL 3142143 (M.D. Ga. Nov. 7, 2025) ..........................................................................................4

*In re Delta/ AirTran Baggage Fee Antitrust Litig.*,
317 F.R.D. 675 (N.D. Ga. 2016) ..........................................................12

*Dickens v. GC Servs. Ltd. P'ship*,
706 F. App'x 529 (11th Cir. 2017) ......................................................12

*Doe v. MG Freesites, LTD*,
707 F.Supp.3d 1157 (N.D. Ala. 2023) ......................................14, 15, 24

*Ebert v. Gen. Mills, Inc.*,
  823 F.3d 472 (8th Cir. 2016) ..............................................................14

*Gamache v. Hogue*,
  338 F.R.D. 275 (M.D. Ga. 2021)........................................................11

*Griffin v. Carlin*,
  755 F.2d 1516 (11th Cir. 1985) .........................................................13

*Haley v. Delta Airlines, Inc.*,
  No. 1:21-CV-1076-TCB, 2022 WL 950891 (N.D. Ga. Mar. 29,
  2022) ..................................................................................................2, 6

*Hines v. Widnall*,
  334 F.3d 1253 (11th Cir. 2003) ...........................................................9

*Huntsman v. Southwest Airlines, Co.*,
  No. 19-cv-00083-PJH, 2021 WL 391300 (N.D. Ca. Feb. 3, 2021)
  ................................................................................................8, 13, 19, 23

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................15

*Jackson v. Athena Bitcoin, Inc.*,
  No. 4:24cv331-MW/MJF, 2025 WL 2237453 (N.D. Fla. June 18,
  2025) ......................................................................................................6

*Jones v. Desantis*,
  No. 4:19CV300-RH/MJF, 2020 WL 5646124 (N.D. Fla. Apr. 7,
  2020) ......................................................................................................4

*Jones v. Gov't Emps. Ins. Co.*,
  No. 6:170-cv-891-Orl-40LRH, 2019 WL 1490703 (M.D. Fla. Apr.
  4, 2019) ................................................................................................11

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .............................................20, 24, 25

*Lickteig v. Bus. Men's Assur. Co. of Am.*,
  No. 93- 0888-CV-W-6, 1994 WL 463944 (W.D. Mo. Aug. 25,
  1994) ........................................................................................................22

*Mauldin v. Wal-Mart Stores, Inc.*,
  No. Civ.A.1:01-CV2755JEC, 2002 WL 2022334 (N.D. Ga. Aug.
  23, 2002) ...................................................................................................16

*Meza v. Marstiller*,
  No. 3:22-CV-783-MMH-LLL, 2023 WL 2648180 (M.D. Fla. Mar.
  27, 2023) ...................................................................................................11

*Monroe Cnty. Employees' Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ...............................................................21

*Morris PHH Mortg. Corp.,* No. 20-60633-CIV, 2022 WL 18859412
  (S.D. Fla. Dec. 22, 2022) ..........................................................................10

*Myrick v. City of Hoover, Alabama*,
  69 F.4th 1309 (11th Cir. 2023) ...........................................................3, 4, 7

*Owens v. Metro. Life Ins. Co.*,
  323 F.R.D. 411 (N.D. Ga. 2017) ...............................................................12

*Piazza v. EBASCO Indus. Inc.*,
  273 F.3d 1341 (11th Cir. 2001) .................................................................15

*Pickett v. Iowa Beef Processors*,
  209 F.3d 1276 (11th Cir. 2000) .................................................................12

*Ross v. Bank S., N.A.*,
  837 F.2d 980 (11th Cir. 1988) ..............................................................10, 11

*Schojan v. Papa Johns Int'l, Inc.*,
  303 F.R.D. 659 (M.D. Fla. 2014) ..............................................................10

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
  543 F.3d 597 (10th Cir. 2008) ...................................................................17

*Stalley v. ADS All. Data Sys., Inc.*,
  296 F.R.D. 670 (M.D. Fla. 2013) ..............................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................................18

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012)..................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................5, 6, 14, 16

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) .............................................................3, 14, 25

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ...................................................................17

**Statutes**

38 U.S.C. § 4316...............................................................................*passim*

38 U.S.C. § 4323 .....................................................................................16

O.C.G.A § 15-12-1.1................................................................................8

**Other Authorities**

20 C.F.R. § 1002.150 ........................................................................4, 7, 19

2 *Newberg and Rubenstein on Class Actions* § 4:38 ................................14

Fed. R. Civ. P. 23 .............................................................................*passim*

vii

## Index of Exhibits

Defendant Delta Air Lines, Inc.'s Initial Disclosures (ECF No. 52)

Attachment A to Defendant Delta Air Lines, Inc.'s Initial Disclosures (ECF No. 52-1)

Order on Plaintiff Haley's Motion to Compel (ECF No. 97)

Declaration of Stephen J. Anderson ("Anderson Decl.") (ECF No. 118-2)

Declaration of R. Joseph Barton ("Barton Decl.") (ECF No. 118-3)

Declaration of Benjamin A. Best ("Best Decl.") (ECF No. 118-4) with the following attachment:

> 1. Duties of a Class Representative

Declaration of Roberto Cavazos ("Cavazos Decl.") (ECF No. 118-5) with the following attachment:

> 1. Expert Report of Dr. Roberto Cavazos dated April 3, 2023 ("Cavazos Rep.")

Declaration of Colin M. Downes ("Downes Decl.") (ECF No. 118-6) with the following attachments:

> 1. Pilot Working Agreement between Delta Air Lines, Inc. ("Delta") and the Air Line Pilots in the Service of Delta as represented by the Air Line Pilots Association, International ("ALPA") dated December 1, 2016, produced by Delta in this litigation and bearing Bates number DELTA_3204 (ECF No. 118-7);
>
> 2. Pilot Working Agreement between Delta and ALPA effective as of July 1, 2012, and updated May 2015, produced by Delta in this litigation and bearing Bates number DELTA_31 (ECF No. 118-8);
>
> 3. Joint Collective Bargaining Agreement among Delta, Delta Air Lines Master Executive Council, Northwest Airlines Master Executive Council, and ALPA dated June 24, 2008, produced by Delta in this litigation and bearing Bates number DELTA_1980 (ECF No. 118-9);

4. Agreement between Delta and ALPA dated June 1, 2006, produced by Delta in this litigation and bearing Bates number DELTA_4427 (ECF No. 118-10);

5. The Expert Report of Dr. Darin Lee dated May 2, 2023 ("Lee Rep.") (ECF No. 118-11);

6. Stipulation Regarding Testimony of Delta dated April 20, 2023 ("Delta 30(b)(6)") (ECF No. 118-12);

7. Delta's Second Amended Responses to Plaintiff Patrick Haley's First Set of Interrogatories Nos. 12, 13, and 14, dated March 2, 2023 (ECF No. 118-13);

8. Excerpts of the Deposition of Jason Zawislak taken December 7, 2022 ("Zawislak Dep.") (ECF No. 118-14).

Declaration of Michael Scimone ("Scimone Decl.") (ECF No. 118-15)

Full Transcript of Deposition of Jason Zawislak taken December 7, 2022 ("Zawislak Dep.") (ECF No. 123-3)

Transcript of Hearing held on November 28, 2023 (ECF No. 138)

Defendant Delta Air Lines, Inc.'s Supplemental Response in Opposition to Plaintiffs' Motion for Class Certification (ECF No. 170)

Second Amended Consolidated Complaint (ECF No. 182)

## Introduction

Plaintiffs propose certifying two Classes—a Damages Class and Injunction Class—for current and former Delta pilots. Both Classes satisfy Rule 23(a) as does Benjamin Best, a current Delta pilot and servicemember. The USERRA § 4316(b) claim arises from Delta's uniform employment practice in failing to provide paid short-term military leave to pilots while providing pay for other, comparable leaves. The claim by the Injunction Class satisfies Rule 23(b)(2) and the claims of both Classes satisfy Rule 23(b)(3). The claim in this case can be determined as to all Class members based on common proof.

## Background

Benjamin Best is a pilot for both Delta and the Michigan Air National Guard. Best. Decl. ¶ 1-2. During his employment with Delta, he has taken short-term military leave to perform his military duties. *Id*. at ¶ 2. For all pilots who take short-term military leave, Delta's policy is that leave is unpaid. *Id*.; Zawislak Dep. at 95:2-4. At least since 2007, under the terms of its pilot working agreements — collective bargaining agreements ("CBAs") that cover all Delta pilots and govern their employment—Delta has provided leave for other forms leave, such as jury duty, bereavement, vacation, or sick leave. Downes Decl. ¶ 4. Such leaves are "pay protected." Zawislak Dep. at 73:2-4.

1

The Complaint alleges that Delta's practice violates USERRA, 38 U.S.C. § 4316(b). ECF No. 182 at ¶¶ 70-79. This claim alleges that "Delta's failure to provide paid leave to employees on short-term military leave violates USERRA's requirement that employers provide employees on military leave the same rights and benefits as are provided to employees on comparable, non-military leave." *Haley v. Delta Airlines, Inc.,* No. 1:21-CV-1076-TCB, 2022 WL 950891, at *2 (N.D. Ga. Mar. 29, 2022) (denying motion to dismiss).

### Argument

"The Supreme Court has made clear that district courts must grant class certification in 'each and every case' where the conditions of Rule 23(a) and (b) are met." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–400 (2010) finding a court "lack[s] discretion to add requirements to the Rule."). An analysis of whether a class can be certified may "entail some overlap with the merits of the plaintiff's underlying claim," but "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-466 (2013). The claims here satisfy all the requirements of Rule 23.

2

## I.    Overview of the Elements of the Proof Required for the Claims

Although "a court should not determine the merits of a claim" at class certification, the Eleventh Circuit has held that "it is appropriate to 'consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'" *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1358 (11th Cir. 2009). The Eleventh Circuit has clarified the liability analysis of a USERRA § 4316(b) claim. *Myrick v. City of Hoover, Alabama*, 69 F.4th 1309 (11th Cir. 2023) (affirming summary judgment for plaintiffs).

USERRA § 4316(b) involves "a two-step process for determining which benefits are available to employees on military leave." *Myrick,*  69 F.4th at 1314. First, the servicemember must identify a group of employees "having similar seniority, status, and pay who are on ... leave of absence[.]" *Id.* (quoting 38 U.S.C. § 4316(b)(1)(B)). "Second, the military employee must prove that those employees took a form of non-military leave that is comparable to military leave" (i.e. a comparator leave). *Id.* at 1315 (citing 20 C.F.R. § 1002.150(b)). "A military employee who clears both hurdles is entitled to the same benefits that the similarly situated employees received while on the comparable form of leave." *Id.* Duration is the "most significant factor," but purpose of the leave and ability to choose when

3

to take the leave are also relevant. 20 C.F.R. § 1002.150(b). [1] If the enumerated

factors all weigh one way, they will outweigh unenumerated factors.

*Myrick*, 69 F.4th at 1320 n.8 (citing *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424,

436 (9th Cir. 2023) (reversing summary judgment for defendant)).

## II.     The Classes Are Properly Defined.

Rule 23(b)(3) implicitly requires that "the proposed class is 'adequately

defined and clearly ascertainable.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977,

984 (11th Cir. 2016) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304

(11th Cir. 2012)). [2] A "class is ascertainable if it is adequately defined such that its

membership is capable of determination." *Id*. Class membership can be determined

from objective facts: employment as a Delta pilot (in geographic areas covered by

USERRA), and either taking military leave of fewer than 30 days or currently

serving in the military. [3] Thus, the Classes are properly defined and ascertainable.

---

[1]  Duration does not include frequency because "[i]ncluding frequency in the duration analysis effectively undermines the purpose of USERRA." *Clarkson*, 59 F.4th at 436.

[2] Rule 23 does not require showing that it is administratively feasible to identify Class members. *Cherry,* 986 F.3d at 1304. As that question may be considered on the manageability criterion of Rule 23(b)(3)(D), it is addressed there.

[3] The binding "law of th[is] Circuit is that ascertainability is not a requirement for certification of a (b)(2) class." *Jones v. Desantis,* No. 4:19CV300-RH/MJF, 2020 WL 5646124, at *6 (N.D. Fla. Apr. 7, 2020) (finding that the still "controlling case is *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)"); *see Davis v. United*

4

### III.    The Requirements of Rule 23(a) are Satisfied for Both Classes.

#### A.    Joinder of Members of Both Classes Would Be Impracticable.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (reversing decertification for insufficient numerosity). Based on Delta's data, Plaintiffs' expert identified 3,361 Delta pilots who took short-term military leave between 2007 and 2022. Cavazos Rep. ¶ 16. Based on the most recent Delta pilot leave data produced (October 2022), there are at least 669 current Delta pilots who are also a member of the uniformed services. Downes Decl. ¶ 2. Thus, both Classes satisfy Rule 23(a)(1) based on numbers alone.

#### B.    The Classes both Raise Common Questions of Law and Fact.

"[A] single [common] question" will satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality exists if plaintiffs' claims "depend upon a common contention" that is "of such a nature that it is capable of

---

*Bank Corp. Ret. Plan Comm.,* No. 5:24-cv-328-MTT, 2025 WL 3142143, at *1 (M.D. Ga. Nov. 7, 2025) (same). Four other Circuits have also held that ascertainability is "not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Cole v. City of Memphis*, 839 F.3d 530, 541-42 (6th Cir. 2016) (citing cases from the First, Third and Tenth Circuits).

classwide resolution." *Id.* at 350. The existence of "a general policy" or a "uniform

employment practice" satisfies Rule 23(a)(2). *Id*. at 355. The Eleventh Circuit has

repeatedly explained that Rule 23(a)(2) "does not require that all the questions of

law and fact raised by the dispute be common." *Cox v. Am. Cast Iron Pipe Co.*,

784 F.2d 1546, 1557 (11th Cir. 1986); *Benjamin v. Oliver,* 800 F.Supp.3d 1314,

1344 (N.D. Ga. 2025) (citing 11th Circuit cases). Applying this principle, a court

in this Circuit found that where at least "some, if not all, of the[] issues are capable

of classwide resolution," then commonality was met. *Jackson v. Athena Bitcoin,*

*Inc.,* No. 4:24cv331-MW/MJF, 2025 WL 2237453, at *4 (N.D. Fla. June 18, 2025)

(finding argument that several issues "will also require individualized inquiry" did

not address commonality). Here, the central common issues are whether (1) paid

leave is a right or benefit under USERRA § 4316(b) and (2) short-term military

leave is comparable to a form of paid leave that Delta provides to pilots.

The first issue is a legal one that was previously addressed and decided for

Plaintiffs on the motion to dismiss. *Haley,* 2022 WL 950891, at *4-5.[4] The answer

to that question will not differ among Class members. *Clarkson v. Alaska Airlines*

*Inc.*, No. 2:19-CV-0005-TOR, 2020 WL 4495278, at *4 (E.D. Wash. Aug. 4,

---

[4] While this issue was addressed on the motion to dismiss, Delta could re-raise this question or raise this issue on appeal.

6

2020) (holding this question alone satisfied commonality).

The second issue will be subject to common proof, because the relevant factors set forth in 20 C.F.R. § 1002.150(b) to determine comparability of leaves— duration (the most important factor), purpose, and ability to choose when to take the leave—do not turn on issues unique to specific employees.[5] Courts analyze duration by comparing a stretch of military leave to the length of the comparator leaves (*e.g.* the mean, median, mode, and maximum). *Myrick*, 69 F.4th at 1320; *Clarkson*, 59 F.4th at 435. These statistical characteristics of the comparator leaves will not differ among Class members and such a comparison will be accomplished using common evidence: Delta's leave data and/or data from the U.S. Department of Defense ("DOD"). *See* Cavazos Rep. ¶¶ 9-18.

The other factors—purpose of the leave offered by Delta and the ability of pilots to choose when to take leaves under the CBA—will be based on common proof. *See Myrick*, 2023 WL 3881280, at *7 (holding military leave and jury duty leave serve similar purposes and "[m]ilitary employees do not control when they will be summoned for active-duty service"); *Clarkson*, 59 F.4th at 439 (holding

---

[5] Delta may identify factors not listed in 20 C.F.R. § 1002.150(b), but the Eleventh Circuit found the factors in the regulation outweigh unenumerated factors "when considering whether two leaves are comparable." *Myrick,* 69 F.4th at 1320 & n.8 (citing *White v. United Airlines*, 987 F3d 616, 620 (7th Cir. 2021)).

7

jury could "find that pilots' level of control over their military duty is comparable to their level of control over other types of leaves").[6]

Resolving these claims will turn primarily on three sources of evidence. *First*, the relevant employment policies in CBAs and flight operations manuals that contain the employment rules for Delta pilots, including eligibility for these leaves, whether they are paid, and the circumstances under which they can be taken. Zawislak Dep. 21:7-16, 22:2-4, 31:11-19; Delta 30(b)(6) ¶ 19. The material similarity of the relevant provisions of the CBAs over the Class period, and the uniformity of their application to Delta pilots make the issues of both the benefits provided to Delta pilots on various forms of leave and the ability under the CBA to choose when to take those leaves resolvable on a classwide basis using common evidence. Downes Decl. ¶ 4. *Second*, data from Delta and the DOD reflect the

---

[6] To the extent that Delta argues that pilots have some flexibility when miliary duties occur (or whether to use leave), that is true for comparable leaves. Zawislak Dep. at 58:20-24 (sick absences include scheduled surgeries), 85:5-20 (pilot determines start of bereavement leave); ECF No. 118-7 at 13-6 (same), 7-4 (pilots bid for vacation); O.C.G.A § 15-12-1.1 (juror may defer service to another date by showing good cause). That characteristic applies generally to the leave category and does not require an analysis by class member or even by leave period. *See Huntsman v. Southwest Airlines, Co.*, No. 19-cv-00083-PJH, 2021 WL 391300, at *6 (N.D. Ca. Feb. 3,2021). Any suggestion that this factor requires testimony from each class member's commander or Delta supervisor is belied by Delta's failure to identify any such person on its witness list. ECF No. 52.

dates and durations of Class members' leave and military service. *See* Cavazos Rep. ¶¶ 9-18 (describing Delta leave data); Lee Rep. ¶ 11 (recognizing that PCARS reports "generated by the military…. track[] military service events"). *Third,* testimony—from Delta employees and experts—about the purposes of different forms of leave offered under the Delta pilot CBA.[7] Thus, these common questions will generate common answers based on common proof.

### C.    The Claims and Defenses Are Typical of those of the Classes.

Rule 23(a)(3) "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003).

### 1.    Mr. Best's Claims Are Typical of the Classes' Claims.

"[F]actual differences among the claims of the putative class members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004); Typicality is met where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). "The typicality requirement may be satisfied

---

[7] Delta identified just one knowledgeable witness about pilot leaves—Jason Zawislak. ECF No. 52-1.

even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class," *Morris PHH Mortg. Corp.,* No. 20-60633-CIV, 2022 WL 18859412, at *4 (S.D. Fla. Dec. 22, 2022); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 642 (S.D. Fla. 2015) (same).

Here, the Complaint challenges Delta's uniform employment practice based on the same legal theory. The Classes have been subject to materially similar written policies since at least 2007: all short-term military leave for Delta pilots has been unpaid. Zawislak Dep. at 95:2-4; 121:6-19; Downes Decl. ¶ 4. But Delta has consistently provided paid leave to pilots for jury duty, bereavement, sick leave, and vacation. *Id*. The legal theories are identical: under USERRA § 4316(b), the Classes were and are entitled to be paid for these periods of short-term military leave, just as for other, comparable forms of leave. Thus, typicality is satisfied.

### 2.    Delta Has No Unique Defenses Against Mr. Best.

"Affirmative defenses do not automatically preclude certification of a class." *Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 670 (M.D. Fla. 2014) (finding defense did not make plaintiff atypical). Defendants merely raising an "arguable" defense does not undermine typicality. *Ross v. Bank S., N.A.*, 837 F.2d 980, 991 (11th Cir. 1988) (affirming certification), *vacated on other grounds*, 848 F.2d 1132

10

(11th Cir. 1988) (en banc). A defense undermines certification only where it is "unique to the named plaintiff or a small subclass" and "predictable" that it will be "a major focus of the litigation." *Id*. Here, none of affirmative defenses asserted by Delta appear to encompass Mr. Best (and certainly not any unique to him).[8]

### D.    Mr. Best and His Counsel Will Adequately Represent the Classes.

Rule 23(a)(4) asks "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Meza v. Marstiller*, No. 3:22-CV-783-MMH-LLL, 2023 WL 2648180, at *11 (M.D. Fla. Mar. 27, 2023) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

### 1.    Mr. Best is an Adequate Class Representative.

A class representative needs only to have "a basic understanding of the facts and legal theories underpinning the lawsuit and is willing to shoulder the burden of litigating on the class's behalf." *Jones v. Gov't Emps. Ins. Co.*, No. 6:170-cv-891-Orl-40LRH, 2019 WL 1490703, at *5 (M.D. Fla. Apr. 4, 2019); *see Gamache v. Hogue*, 338 F.R.D. 275, 288 (M.D. Ga. 2021) (rejecting argument that plaintiff had

---

[8] Mr. Best does not appear to be subject to Delta's estoppel, laches, or unclean hands defense. Delta 30(b)(6) at ¶ 23, 25, 27; Downes Decl. Ex. 7 at Nos. 12 & 13. Delta's bankruptcy release defense applies only to military leaves that commenced prior to April 30, 2007. Delta 30(b)(6) at ¶ 21. This is before Best became a Delta employee in 2014 and before the start of the Damages Class. *See* Best. Decl. ¶ 1.

11

insufficient understanding of claims). Mr. Best has reviewed the Complaint, understands the legal theory, understands his duties as a class representative, and is willing to assume those duties. Best. Decl. ¶¶ 4-7.

### 2.   There Are No Intra-class Conflicts.

A conflict is disqualifying "only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). "[M]inor conflicts alone will not defeat a party's claim to class certification." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 535 (11th Cir. 2017) (reversing denial of class certification). A disqualifying conflict requires some class members to "have been harmed by the same conduct that benefited other members of the class." *In re Blue Cross Blue Shield Antitrust Litig.,* 85 F.4th 1070, 1091 (11th Cir. 2023); *In re Delta/ AirTran Baggage Fee Antitrust Litig.,* 317 F.R.D. 675, 695 (N.D. Ga. 2016) (finding the benefits must be "so significant and apparent that the class members receiving them effectively had no incentive to see the challenged practice(s) declared unlawful"). No conflict exists where "all class members share common objectives and the same factual and legal positions and have the same interest in establishing [defendants'] liability." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 418 (N.D. Ga. 2017). No Class member has benefitted by not being paid by Delta

12

for short-term military leave, and none would be harmed by being paid. There are no fundamental conflicts.

### 3.    Proposed Class Counsel Satisfy Rule 23(a)(4) and 23(g).

Counsel are adequate if they are "qualified, experienced, and generally able to conduct the proposed litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). This can be shown through declarations that establish "many years of experience in class action litigation." *Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 683 (M.D. Fla. 2013) (rejecting argument that counsel was not qualified). Proposed Co-Lead Class Counsel have extensive experience in the prosecution of complex class action employment and employee benefits cases. Joseph Barton has more than 24 years' experience handling complex employee benefit class actions and Michael Scimone has more than 15. Barton Decl. ¶¶ 2-12; Scimone Decl. ¶ 7. Other courts have appointed Mr. Barton and Mr. Scimone as Co-Lead Class Counsel in actions bringing similar claims under USERRA § 4316(b). *E.g. Baker v. United Parcel Service, Inc.,* No. 2:21-cv-0114-TOR, 2023 WL 4355333, at *5 & 6 (E.D. Wash. July 5, 2023); *Huntsman*, 2021 WL 391300, at *10; *Clarkson*, 2020 WL 4495278, at *5. Stephen Anderson has sufficient experience to serve as Liaison Class Counsel. Anderson Decl. ¶¶ 4-5.

13

**IV.    The Requirements of Rule 23(b) are Satisfied for Both Classes.**

The Eleventh Circuit has endorsed hybrid classes in employment actions—a damages class and injunction class—where the Rule 23(b)(2) class is "confined to current employees" because "only those class members" have standing to seek injunctive relief. *Williams,* 568 F.3d at 1360 (reversing denial of class certification and remanding to consider hybrid certification). After the Supreme Court's decision in *Dukes,* "hybrid certification" remains "an available approach." *Ebert v. Gen. Mills, Inc.,* 823 F.3d 472, 480 (8th Cir. 2016); *see* 2 *Newberg and Rubenstein on Class Actions* § 4:38 (explaining that hybrid certification "insulates the (b)(2) class piece from the money damage portion of the case, hence complying with *Wal-Mart*'s admonition against adjudicating individual damage claims in a (b)(2) class action"). After *Dukes*, the Eleventh Circuit affirmed certification of a hybrid class. *In re Blue Cross Blue Shield*, 85 F.4th at 1091 (affirming certification, over objection, of "Rule 23(b)(2) class [which] would receive injunctive relief and the Rule 23(b)(3) damage class" as consistent with Circuit precedent); *Doe v. MG Freesites, LTD*, 707 F.Supp.3d 1157, 1187 (N.D. Ala. 2023) (certifying Rule 23(b)(2) class where plaintiff was "also seeking damages separately in a Rule 23(b)(3) class"). Here, the Injunction Class satisfies Rule 23(b)(2) and both Classes

14

satisfy Rule 23(b)(3).[9]

### A.    The Claims of the Injunction Class Satisfy Rule 23(b)(2).

Rule 23(b)(2) applies where (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class, [(2)] so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

### 1.    Delta Has Acted on Grounds Applicable to the Class.

Rule 23(b)(2) was designed for "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class." 1966 Adv. Comm. Notes to Rule 23. Rule 23(b)(2) was designed to allow "employees to obtain company-wide injunctive relief." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001) (certifying (b)(2) class in employment discrimination case). The focus of Rule 23(b)(2) is whether Defendant's conduct was uniform as to the class. *Colonel Fin. Mgmt. Officer v. Austin*, 622 F.Supp.3d 1187, 1204 (M.D. Fla. Aug. 18, 2022). Rule 23(b)(2) "requires common behavior by the defendant towards the class." *Doe*, 707 F.Supp.3d at 1186 (quoting *Casa Orlando Apart-*

---

[9] Where a claim meets the requirements of 23(b)(1) or 23(b)(2), the claim should not be certified under Rule 23(b)(3). *Piazza v. EBASCO Indus. Inc.*, 273 F.3d 1341, 1352-53 (11th Cir. 2001) (holding claim that met the requirements of Rule 23(b)(1) should not have been certified under 23(b)(3)). Thus, the Injunction Class claims should be certified under Rule 23(b)(3) only if Rule 23(b)(2) is not met.

*ments Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010)). For Rule

23(b)(2), "it is not necessary for all Class Members to be aggrieved by the

challenged practice." *Chianne v. Harris*, No. 3:23-cv-985-MMH-LLL, 2026 WL

32126, at *79 (M.D. Fla. Jan. 6, 2026); *see Chianne D. v. Weida*, 2024 WL

1743334, at *15, 23 (M.D. Fla. Apr. 23, 2024) (citing cases including *Johnson v.*

*Am. Credit Co. of Ga.,* 581 F.2d 526, 532 (5th Cir. 1978) for the same proposition).

Here, Delta applies a uniform written policy to every Class member: military leave

is unpaid, but other, comparable forms of leave are paid. Downes Decl. ¶ 4. As

Delta's policies apply to all pilots, this criterion is satisfied.

### 2.    The Injunction Class Would Be Entitled to Final Declaratory and Injunctive Relief.

Rule 23(b)(2) applies "when a single injunction or declaratory judgment

would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

USERRA expressly authorizes the court to "require the employer to comply with

the provisions of [USERRA]." 38 U.S.C. § 4323(d)(1). If Best succeeds on his

claim, the Injunction Class would be entitled to a declaration that Delta's practice

violates USERRA § 4316(b) and a corresponding injunction requiring Delta to

comply. *See Mauldin v. Wal-Mart Stores, Inc.*, No. Civ.A.1:01-CV2755JEC, 2002

WL 2022334, at *16 (N.D. Ga. Aug. 23, 2002) (seeking to enjoin "ongoing policy"

of employment "falls squarely within the requirements of Rule 23(b)(2)").

16

As a case cited by Delta explains, a plaintiff need not describe an injunction that satisfies Rule 65(d) at class certification. *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 605 n.4 (10th Cir. 2008). Instead, plaintiff must merely describe how the remedy "might satisfy Rule 65(d)" so the court could "conceive" of an appropriate injunction. *Id*.[10] A court in this Circuit explained that "an injunction or series of injunctions restructuring and restricting [the employer's employment] practices" that would put class members to seek "on equal footing" suffices. *Davis v. Mar-Jac Poultry, LLC*, No. 6:18-cv-1433-LSC, 2024 WL 218510, at *13 (N.D. Ala. Jan. 19, 2024) (rejecting argument that those would be a "follow-the-law injunction"). Like *Davis*, where the injunction would "enjoin certain [employment] policies and practices," the injunction here would enjoin Delta from refusing to pay military leave based on the trial findings as to what constitutes comparable leaves. *See id.*

### B.    Both Classes Satisfy Rule 23(b)(3).

Rule 23(b)(3) requires (1) "common questions of law or fact predominate

---

[10] Arguments about a contemplated injunction "has no place in a class certification analysis." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 117 (E.D.N.Y. 2012) *see Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017) (holding "Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at class certification" and finding proposed order requiring prison to maintain "safe indoor apparent temperature" sufficient).

over questions affecting only individual class members;" and (2) "a class action is superior to other available methods for adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both classes satisfy Rule 23(b)(3).

### 1.    Common Questions Predominate.

Predominance tests "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,'" while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* When "one or more of the central issues in the action are common to the class and can be said to predominate," the action is proper under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

Here, the central common liability questions Classes are (1) whether paid leave is a right and benefit under USERRA § 4316(b), and (2) whether short-term military leave is comparable to a form of paid leave that Delta provides to pilots. *Supra* III.B. The first issue is a legal one and the latter one will be resolved based

18

on common proof. Under the DOL regulation, "to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor" and "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should be considered." 20 C.F.R. § 1002.150(b). These factors outweigh unenumerated ones. *Supra* III.B.

The first and most significant factor, duration, will be analyzed based on Delta's own leave data (already produced), which allows a comparison between the duration of short-term military leaves and the duration of other leaves. The next factor, purpose, turns on the overall purpose of each type of leave, which does not differ based on the person who takes the leave. Zawislak Dep. at 41:22-42:1, 62:22-63:16, 72:22-1, 86:9-87:7, 97:24-98:14. The third factor, the ability to choose when to take the leave, will turn on the policies contained in CBAs and handbooks which Delta already produced that set forth the forms of leave available to pilots and the terms on which that leave was offered, including when such leave may be taken. Zawislak Dep. at 21:8-16, 31:11-19; Downes Decl. ¶ 4. As the claim challenges uniform conduct that harmed them in the same way -- short-term military leave was not pay protected – other courts have found that common questions predominate for similar claims. *Baker*, 2023 WL 4355333, at *5; *Huntsman*, 2021 WL 391300, at *13; *Clarkson*, 2020 WL 4495278, at *6.

19

Issues about damages calculations do not defeat predominance. *Carriuolo*, 823 F.3d at 988; *Klay v. Humana, Inc.,* 382 F.3d 1241, 1259 (11th Cir. 2004) (quoting *Allapattah Servs. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003)). Once the central liability issues are addressed, calculating damages will be a purely administrative task: they will be based on the Class Member's pay rate, period of leave, and the terms of the comparable form of leave that was treated more favorably than short-term military leave. *See* Cavazos Rep. ¶ 26. Using data about the military leaves of the Class, their schedules, and pay, this method will determine "the amounts that would have been paid the employee for dropped flights or for missed periods of reserve availability resulting from short-term military leave, in accordance with the terms of the applicable collective bargaining agreement." *Id.* As Delta pays pilots for the first four days of bereavement leave, if "it was determined that leave due to death of an immediate family member was comparable to short-term military leave, the pilot would be entitled to be paid as shown in their line for the first four days of short-term military leave (i.e., the value of trips dropped or reserve availability missed in the first four days of the short-term military leave)." *Id.*

Delta's expert criticized Dr. Cavazos for not explaining how to calculate damages in every theoretical scenario. Lee Rep. ¶ 66. But Plaintiff needs only to

20

articulate a damages model capable of calculating damages on a class-wide basis—

not fully delineate every technique and calculation. *Monroe Cnty. Employees' Ret.

Sys. v. S. Co.*, 332 F.R.D. 370, 399 (N.D. Ga. 2019) (finding "sufficient for class

certification that [the expert] has specified a damages model that can be used to

establish damages using a common methodology for all class members," although

"certain of the inputs to that model are not yet ascertainable"). To do more depends

on "development of the fact record on the merits." *Id*. That will require analysis of

benefits data, scheduling data, pay and hours data, and DOD data—much of which

Plaintiff does not have because the Court held this data need not be produced until

after class certification. ECF No. 97 at 9-11.

Delta's expert asserts that Delta's records about military leave cannot be

used to calculate damages because they are inaccurate and incomplete. But his

opinion is predicated on an assumption from Delta's counsel:

> that the leave of absence from employment that is covered under and
> protected by USERRA is the entire period of time that the employee is
> performing service in the uniformed service because of a leave event
> and the additional period of time the employee is unavailable to work
> based on the military event, regardless of whether that entire period
> spans scheduled work days and/or scheduled days off.

Lee Rep. ¶ 8. Based on this assumption, Lee infers that some Class Members did

not report all military service because they only recorded leave if their military

service caused them to be absent from work, others used vacation to perform

21

miliary service, and still others falsely reported such leave. *First,* USERRA only protects a person "absent from a position of employment by reason of service in the uniformed services." 38 U.S.C. § 4316(b)(1). [11] A person who is not absent from employment is not on a compensable military leave. *Id.; Brill v. AK Steel Corp.,* No. 2:09-CV-534, 2012 WL 893902, at *12 (S.D. Ohio Mar. 14, 2012) (holding in USERRA§ 4316(b) action that plaintiff was "only entitled to recover benefits" where "he would have worked at [his civilian employer] but for his military obligations"). *Second*, under the Damages Class definition, leave recorded as vacation is not included. *Third*, the possibility that some employee may have falsely reported taking military leave might afford Delta an affirmative defense, but that is distinct from the sufficiency of the damages model. Indeed, Delta's expert acknowledged that DOD service records would afford a basis to cross-check Delta's data to exclude leaves not corresponding to a period of military service. Lee Rep. ¶ 13. Even if Delta's own data were incomplete, the DOD military service data (which Plaintiffs have been precluded from seeking, ECF No. 97 at

---

[11] "One can not be absent from work unless required to be working." *Lickteig v. Bus. Men's Assur. Co. of Am.,* No. 93- 0888-CV-W-6, 1994 WL 463944, at *4 (W.D. Mo. Aug. 25, 1994) (holding employee who "was not scheduled to work on" a particular day "was not absent from work" that day under plain language of that term), *aff'd,* 61 F.3d 579 (8th Cir. 1995) (finding where an employee was not scheduled to work, he was not absent from employment).

10-11) would allow determination of "the entire period of time that the employee is performing service in the uniformed service," and damages could be calculated according to Dr. Cavazos's method after consolidating the Delta and DOD data. *See Huntsman*, 2021 WL 391300, at \*13 (holding errors in employer's military leave data did "not support a conclusion that class members will need to present individualized evidence to support their military service"); Cavazos Rep. ¶ 30.

To the extent that Plaintiff must prove, as Delta has suggested, that class members gave Delta *advance* notice of military duties, that will be based on Delta's military leave data, iCrew data, and Delta's military notification log. *First*, the very fact that military leave is reported in Delta's data evidences that Delta had advance notice of that leave. *Second,* iCrew records the date and time that a military absence is reported to Delta. ECF No. 138 at 55:4-11; *e.g.* Ex. 12. Delta has such records from 2018 to the present. ECF No. 170 at 10 n.4. *Third,* from 2017 forward, Delta has logs reflecting the dates when pilots notified Delta of their leave. ECF No. 138 at 55:16-56:5. Prior to 2017, Delta has records of when military leave was actually entered by Delta's crew resources team on a pilot's schedule back to 2011. *Id*. at 56:6-24; 76:21-77:2. If those entries precede the leave, that will show Delta was provided with advance notice of the duty. Verbal notification is "less common," *Id.* at 43:7-18, and Delta's general manager of

23

flying operations could not definitely testify whether anyone actually provides notice in this manner. *Id*. at 73:18-75:13. But even for verbal notifications, chief pilots report the notification that records when the leave was posted to a pilot's schedule. *Id*. at 78:17-79:15. Thus, this will also be proved by common evidence.[12]

### 2.    A Class is a Superior Method for Adjudicating this Claim.

Superiority measures whether "a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Klay,* 382 F.3d at 1269 ("[T]he more common issues predominate," the more that a class is a more efficient, desirable, and superior vehicle). The Rule 23 factors weigh in favor of superiority. *First*, class members' interest in controlling the litigation favors superiority where the claims are small and no class members have filed separate litigation. *See id*.[13] Here, each Class member's recovery is likely small. Downes Decl. ¶ 3. *Second*, the lack of other lawsuits supports

---

[12] That defendant lacks data to prove one element of the claims on a classwide basis (even a central one) does not defeat predominance. *MG Freesites*, 2023 WL 8792153, at *11. Whether and for how long a class member took military leave is an "objective" question, not one "subject to opinion or interpretation." *MG Freesites,* 2023 WL 8792153, at *3. Delta can challenges class membership or damages during claims administration process. *Id; see Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1131 (9th Cir. 2017).

[13] Delta has refused to produce data regarding the pay to which Class members may be entitled, by asserting that such requests were premature and only relevant to damages. ECF No. 97 at 9-10. As this Court noted, "district courts considering similar, USERRA cases have certified classes" without such evidence. *Id*.

superiority. *Klay*, 382 F.3d at 1271. *Third*, Delta's headquarters and its largest hub (with the largest concentration of pilots) is here and this Court has decided numerous "preliminary matters." *Id. Finally*, "manageability is ordinarily satisfied so long as common issues predominate over individual issues." *Williams,* 568 F.3d at 1358 (reversing denial of class certification); *Klay*, 382 F.3d at 1272-73 (affirming manageability). Liability will be based on Delta's materially similar written policies and analysis of Delta's data. *Supra* IV.A. Damages will be calculated using that same data. Cavazos Rep. ¶¶ 21-30. There are no issues in ascertaining the Class as the Damages Class is limited to pilots with military leave reported in Delta's data. To the extent there are any individualized issues (such as affirmative defenses), numerous "management tools" exist to sufficiently address those issues. *Klay*, 382 F.3d at 1373 (quoting *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.)). Thus, a class action is the superior method to resolve this dispute.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Class Certification should be granted.

Dated: January 12, 2026          Respectfully submitted,


*/s/ R. Joseph Barton*
R. Joseph Barton*
THE BARTON FIRM LLP
1633 Connecticut Ave., NW
Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
Email: jbarton@thebartonfirm.com


*/s/ Stephen J. Anderson* (by permission)
Stephen J. Anderson
Georgia Bar No. 018325
Kenneth S. Nugent, P.C.
4227 Pleasant Hill Road
Building 11, Suite 300
Duluth GA 30096
Tel: (770) 820-0893
Email: sanderson@attorneykennugent.com

Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Tel: (212) 245-1000
Email: mscimone@outtengolden.com

26

Peter Romer-Friedman*
Robert Friedman*
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, D.C. 20006
Tel: (202) 888-1741
Email: peter@guptawessler.com
Email: robert@guptawessler.com

Matthew Z. Crotty*
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: matt@crottyandson.com

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Email: Tjarrard@att.net

*Attorneys for Plaintiffs Haley & Best*

*Admitted *pro hac vice*

27

*/s/ Crystal L. Matter* (by permission)
Crystal L. Matter*
Matter Law, APC
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Tel: 916-735-7495
Email: crystal@matterlawapc.com

*/s/ Alexander Covey* (with permission)
Alexander Cyclone Covey
Georgia Bar. No 1907417
Kneupper & Covey PC
11720 Amber Park Dr
Ste 160 PMB 1271
Alpharetta, GA 30009
Tel: 678-928-6806
Fax: 855-596-3707
Email: cyclone@kneuppercovey.com

*Attorneys for Plaintiffs Reep & Best*

*Admitted pro hac vice

28

### Certificate of Compliance Pursuant to L.R. 7.1(D)

The undersigned counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in L.R. 5.1(C).[14]

/s/ R. Joseph Barton
R. JOSEPH BARTON
THE BARTON FIRM LLP
1633 Connecticut Ave., NW
Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
Email: jbarton@thebartonfirm.com

---

[14] The operative local rules require that "counsel must certify that the brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B)." L.R. 7.1(D). This appears to be an error, as the font and point selections approved by the Court are set forth in Local Rule 5.1(C). Plaintiff has thus certified compliance with that provision of the Local Rules.

29