**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PATRICK HALEY, RANDAL REEP,
individually and BENJAMIN BEST,
individually and on behalf of himself
and all others similarly situated,

  *Plaintiffs*,


  v.


DELTA AIRLINES, INC.,


  *Defendant*

Civil Action No. 1:21-cv-01076-SEG


**Plaintiffs' Reply Memorandum of
Law in Support of Renewed Motion
for Class Certification**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

    I.      The Classes Are Properly Defined. ......................................................2

          A.     The Injunction Class is Properly Defined & Ascertainable.........2

          B.     The Damages Class Is Properly Defined & Ascertainable. ........3

    II.     The Requirements of Rule 23(a) Are Met. ...........................................4

          A.     There Are Common Issues of Law and Fact for Both Classes. ...............................................................................5

          B.     Plaintiff Best's Claims Are Typical of the Class. .......................9

          C.     Plaintiff Best is a More Than Adequate Class Representative. ..............................................................................10

    III.    The Injunction Class Satisfies the Requirements of Rule 23(b)(2). ............................................................................................11

          A.     The Complaint Adequately Describes the Injunctive & Declaratory Relief. ...................................................................11

          B.     The Injunction Class Properly Seeks Injunctive & Declaratory Relief. ...................................................................12

          C.     "Hybrid Certification" is Permissible and Appropriate. ...........15

    IV.    Both Classes Satisfy the Requirements of Rule 23(b)(3). ..................16

          A.     The Damages Class Satisfies Rule 23(b)(3). .............................16

          B.     The Injunction Class Satisfies Rule 23(b)(3). ...........................20

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Duval Cnty. School Bd.*,
112 F.3d 1475 (11th Cir. 1997) ...........................................................................14

*Allision v. Dolich*,
148 F.Supp.3d 1142 (D. Or. 2015) .....................................................................19

*Amara v. CIGNA Corp.*,
563 U.S. 421 (2011).............................................................................................14

*Ashman v. Winnebago Cnty. Sheriff's Dep't*,
No. 11 C 50388, 2015 WL 641784 (N.D. Ill. Feb. 13, 2015) ...........................18

*Bartholomew v. Lowe's Home Ctrs., LLC*,
No. 2:19-cv-695-JLB-MRM, 2021 WL 3602719 (M.D. Fla. Aug.
13, 2021) ..............................................................................................................15

*Braggs v. Dunn*,
No. 2:14cv601-MHT, 2017 WL 426875 (M.D. Ala. Jan. 31, 2017)..................19

*In re Brannan*,
485 B.R. 443 (Bkrtcy. S.D. Ala. 2013)...............................................................13

*Brill v. AK Steel Corp.*,
No. 2:09-CV-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ..................3, 17

*Checker Cab Operators, Inc. v. Miami–Dade Cnty.*,
899 F.3d 908 (11th Cir. 2018) .............................................................................13

*Clarkson v. Alaska Airlines Inc.*,
No. 2:19-cv-0005-TOR, 2020 WL 4495278 (E.D. Wash. Aug. 4,
2020) ......................................................................................................................4

*Clarkson v. Alaska Airlines, Inc.*,
No. 2:19-cv-0005-TOR, 2025 WL 243024 (E.D. Wash. Jan. 15,
2025) ......................................................................................................................4

ii

*Cole v. City of Memphis*,
   839 F.3d 530 (6th Cir. 2016) ..................................................................................3

*Costello v. BeavEx, Inc.*,
   810 F.3d 1045 (7th Cir. 2016) ................................................................................6

*Cox v. Cmty. Loans of Am., Inc.*,
   No. 4:11-cv-177 (CDL), 2014 WL 1216511 (M.D. Ga. Mar. 24,
   2014) .................................................................................................................13, 20

*Davis v. Mar-Jac Poultry, LLC*,
   No. 6:18-cv-1433-LSC, 2024 WL 218510 (N.D. Ala. Jan. 19,
   2024) ......................................................................................................................12

*Doe v. MG Freesites, LTD*,
   No. 7:21-cv-00220-LSC, 2023 WL 8792153 (N.D. Ala. Dec. 19,
   2023) ......................................................................................................................15

*F.T.C. v. Leshin*,
   719 F.3d 1227 (11th Cir. 2013) ............................................................................14

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ...............................................................................18

*Henderson v. Emory University*,
   2018 WL 6332343 (N.D. Ga. 2018) ......................................................................13

*Hoak v. Plan Admn'r of the Plans of NCR Corp.*,
   No. 1:15-cv-3983-AT, 2017 WL 11709989 (N.D. Ga. Sept. 27,
   2017) ......................................................................................................................13

*Huntsman v. Southwest Airlines Co.*,
   No. 19-cv-00083-PJH, 2021 WL 391300 (N.D. Cal. Feb. 3, 2021) ..................17

*Jacobs v. Quicken Loans, Inc.*,
   No. 15-81386-CIV-MARRA, 2017 WL 4838567 (S.D. Fla. Oct.
   19, 2017) ................................................................................................................13

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   702 F.3d 364 (7th Cir. 2012) ................................................................................13

*Myrick v. City of Hoover, Alabama*,
  No. 2:19-cv-01728-MHH, 2022 WL 892914 (N.D. Ala. Mar. 25,
  2022) .................................................................................................6, 7

*S.E.C. v. Graham*,
  823 F.3d 1357 (11th Cir. 2016) ......................................................14

*Scanlan v. American Airlines Group, Inc.*,
  102 F.4th 164 (3d Cir. 2024) .........................................................7, 8

*Scanlan v. American Airlines Group, Inc.*,
  795 F.Supp.3d 665 (E.D. Pa. 2025)...........................................*passim*

*Shamblin v. Obama for Am.*,
  No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr.
  27, 2015) ..........................................................................................15

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
  543 F.3d 597 (10th Cir. 2008) ........................................................11

*Shuford v. Conway*,
  326 F.R.D. 321 (N.D. Ga. 2018) ...................................................5, 6

*Sierra v. City of Hallandale Beach, Fla.*,
  996 F.3d 1110 (11th Cir. 2021) ......................................................13

*In re Takata Airbag Prod. Liab. Litig.*,
  348 F.R.D. 500 (S.D. Fla. Feb. 26, 2025).......................................17

*Talarico v. Pub. P'ships, LLC*,
  No. 17-2165, 2022 WL 1524109 (E.D. Pa. May 12, 2022) .............19

*United States v. Askins & Miller Orthopaedics, P.A.*,
  924 F.3d 1348 (11th Cir. 2019) ......................................................11

*United States v. Turner*,
  189 F.3d 712 (8th Cir. 1999) ..........................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).....................................................................15, 16

*Williams v. Sweet Home Healthcare, LLC*,
  325 F.R.D. 113 (E.D. Pa. 2018)......................................................19

iv

**Statutes**

USERRA § 4316 .................................................................................*passim*

**Other Authorities**

20 C.F.R. § 1002.73 ........................................................................18

20 C.F.R. § 1002.74 ........................................................................18

Fed. R. Civ. P. 23 .............................................................................*passim*

**INTRODUCTION**

The Complaint challenges Delta Air Lines, Inc.'s ("Delta") written policy and uniform practice that fails to provide pay-protection to pilots taking short-term military leave while pay-protecting other, comparable short-term leaves (which are 30 days or fewer), including jury duty, sick, bereavement and vacation, as violating USERRA § 4316(b)(1). As this is an ongoing policy and Plaintiff Best is a current servicemember and current Delta pilot, Plaintiff seeks certification of two classes: a Damages Class under Rule 23(b)(3) and an Injunction Class under Rule 23(b)(2) and/or (b)(3).

The Damage Class is defined so that the leaves at issue are based on Delta's own records and the Injunction Class is defined to simply include current pilots who are servicemembers. As Plaintiff's expert has already identified the pilots who took short-term military leaves, and the number of leaves based on Delta's records, the Class members are ascertainable

Delta does not dispute that it applied and continues to apply this uniform policy. For the first time, Delta now suggests that there are no common questions, but the core question for both Classes is whether Delta's uniform policy violates USERRA § 4316. Contrary to Delta's assertions, which is based on a single case applying different law and facts, the proof will be based on common evidence consisting of Delta's own data and/or as necessary from the Department of Defense ("DOD"). Delta also claims that Plaintiff's claims are not typical although there is

1

no dispute that Mr. Best has taken short-term military leave protected by USERRA and is a current servicemember. None of Delta's thirteen affirmative defenses are unique to Mr. Best, and most are asserted against every class member. As Delta does not and cannot assert that any class member would not benefit from receiving pay-protected military leave, there is no conflict. And Mr. Best is an adequate class representative.

For the Damages Class, Plaintiff has sufficiently explained how damages can be determined on a class-wide basis. Most of Delta's arguments do not apply to the Injunction Class. As the Complaint challenges Delta's continued uniform policy, the Injunction Class properly seeks declaratory and injunctive relief to prevent application of the policy in the future.  As a result, the Damages Class should be certified under Rule 23(b)(3) and the Injunction Class should be certified under Rule 23(b)(2) or 23(b)(3).

## ARGUMENT

### I.     The Classes Are Properly Defined.

Delta asserts that neither Class is ascertainable. Def. Opp. at 5-6. But a class is properly defined if it is defined by objective means such that it is capable of determination. Pl. Mem. at 4 (citing cases). Both Classes meet these requirements.

### A.     The Injunction Class is Properly Defined & Ascertainable.

Delta insists that a Rule 23(b)(2) class needs to be ascertainable. Def. Opp. at 5-6. But Delta ignores the "binding 'law of th[is] Circuit is that ascertainablity is

2

not a requirement for certification of a (b)(2) class." Pl. Mem. at 4 n.3 (citing cases). Every Circuit considering the issue has held that ascertainability is "not a[] requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (citing the First, Third and Tenth Circuits). The Committee Notes explain that Rule 23(b)(2) applies where class members "are incapable of specific enumeration." *Id.* (quoting 1966 Committee Notes). Even so, the Injunction Class is defined by objective criteria: (1) pilots (2) currently employed by Delta who are (3) also currently members of the uniform services. Pl. Mot a 1. Delta does not even suggest that such persons cannot be ascertained or that these are not objective criteria. Thus, the Injunction Class is properly defined.

### B.     The Damages Class Is Properly Defined & Ascertainable.

Delta asserts that "there is no feasible way to determine which [military leaves] are actually [short-term military leaves] using objective criteria." Def. Opp. at 6. This argument improperly conflates *the length of military service* with the *length of military leave*. Dkt. No. 126 at 7. USERRA § 4316(b) only applies when an employee "is *absent* from a position of employment by reason of service in the uniformed services." 38 U.S.C. § 4316(b)(1) (emphasis added); *Brill v. AK Steel Corp.*, No. 2:09-CV-534, 2012 WL 893902, at *12 (S.D. Ohio Mar. 14, 2012) (holding that plaintiff was "only entitled to recover benefits" under § 4316(b) when "he would have worked at [his civilian employer] but for his military obligations").

As Eleventh Circuit law only requires that the class is "*capable* of determination," the fact that such determination is feasible is evidence by prior decisions and the fact that Plaintiff has identified those pilots. Pl. Mem. at 4. *First*, in *Clarkson v. Alaska Airlines*, the court not only certified *a substantially similar class*, but approved a settlement that provided notice to and *paid 532 pilots* an average of $8,928 per class member *for those short term leaves* of 30 days or fewer. *Clarkson v. Alaska Airlines, Inc.,* No. 2:19-cv-0005-TOR, 2025 WL 243024, at *1, 3-4 (E.D. Wash. Jan. 15, 2025); *Clarkson v. Alaska Airlines Inc.,* No. 2:19-cv-0005-TOR, 2020 WL 4495278, at *7 (E.D. Wash. Aug. 4, 2020) (certifying class). Similarly here, the Damages Class is defined based on whether Delta's own data reflects that a pilot took *leave* from employment at Delta for 30 consecutive days or fewer. Pl Mot. at 1. Using Delta's data, Plaintiff's expert has *already* identified the short-term leaves at issue and 3,361 Delta pilots who have taken such leaves. Dkt. No. 118-5 Ex. A at 3-6. [1] Thus, the Damage Class is properly defined and ascertainable.

## II.    The Requirements of Rule 23(a) Are Met.

Delta does not contest that Rule 23(a)(1) is met. *See* Def. Opp. at 3-6. In all of its original briefing on class certification, Delta never contested Rule 23(a)(2) for either Class. Dkt. No. 123 at 9-12, 170 at 4-8. Delta now contests commonality,

---

[1] Delta' brief recites there are 119,285 short-term military leaves, but omits that those are the short-term military leaves identified by *Plaintiffs' expert. Id.* In other words, Plaintiff has already identified the number of leaves based on the data.

by relying primarily on the decision in *Scanlan v. American Airlines,* but ignores the legal and factual differences in that case. *See* Dkt. No. 178. As to Rule 23(a)(3) and Rule 23(a)(4), Delta's arguments primarily, if not exclusively, addresses the Damage Class, but not the Injunction Class.

### A.    There Are Common Issues of Law and Fact for Both Classes.

For the first time in this litigation, Delta argues that Rule 23(a)(2) is not met. Def. Opp. at 3-6. Previously Delta did not contest commonality. *See* Dkt. No. 126 at 7. In doing so now, Delta ignores that commonality requires (1) only a single common question, (2) not all questions need to be common and (3) challenging a "general policy" or "uniform employment practice" satisfies commonality. Pl. Mem. at 5-6. Delta does not dispute that it has uniform written policy that is consistently applied by which it refuses to provide paid leave for short-term military leave, but provides paid leave to pilots for other short-term leaves. For both Classes, the common question capable of classwide resolution can be simply stated as: Does Delta's policy of not paying pilots short-term military leave despite providing paid leave for other short-term leaves violate USERRA § 4316(b)?

Ignoring cases where courts have certified similar USERRA § 4316(b) claims, Delta cites a case challenging whether a prison was using excessive force in restraining prisoners. *Compare* Def. Opp. at 4 (citing *Shuford v. Conway*, 326 F.R.D. 321 (N.D. Ga. 2018)) *with* Dkt. No. 126 at 8 (citing cases). In *Shuford,* there was no uniform policy or practice and no uniform decision as to when to use

restraints. *Shuford*, 326 F.R.D. at 333-34. By contrast, Delta does not dispute that it has a uniform written policy for all pilots that military leave is unpaid. Pl. Mem. at 16. Indeed, Delta's only witness about pilots confirmed that military leave by pilots at Delta is not paid. Zawislak Dep. (Dkt. No. 123-3) at 95:2-5.

Delta also relies on the decertification decision in *Scanlan v. American Airlines Group, Inc.,* 795 F.Supp.3d 665, 677 (E.D. Pa. 2025) to argue that there are "no common answers or questions in this case." Def. Opp. at 5. Not only was that decision reached after full discovery, but the *Scanlan* decision is based on evidence not present here and is inconsistent with Eleventh Circuit law governing the proof for a USERRA § 4316(b) claim. *See* Dkt. No. 178 at 1-8.

Both the *Scanlan* court and Delta ignore that "where a plaintiff has two methods to prove liability on a class-wide basis, one of which would be based on common evidence and the other based on individualized evidence, commonality and predominance exist because a plaintiff need only show 'that they *can* win their case based on evidence common to the class.'" Dkt. No. 178 at 5 (quoting *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016)). In *Costello*, the Seventh Circuit reversed a denial of certification where proof of only one of two alternative methods could be made "based on common evidence" but the other method would require individualized evidence. *Id.* at 1061. As plaintiffs *could win* their case by relying on common evidence through one method, common questions existed and predominated. *Id.* The same is true here as illustrated by *Myrick*, where the district

6

court found for plaintiffs under USERRA § 4316(b) despite concluding that only "the purpose and control factors favor[ed plaintiffs], and the duration factor favor[ed] defendant." *Myrick v. City of Hoover, Alabama*, No. 2:19-cv-01728-MHH, 2022 WL 892914, *10 (N.D. Ala. Mar. 25, 2022), *aff'd*, 69 F.4th 1309 (11th Cir. 2023). As "[n]ot all of the comparability factors must favor plaintiff to prevail" and "so long as Plaintiff here can prove one or more of the comparability factors based on common evidence, commonality under Rule 23(a)(2) and Rule 23(b)(3) are met." Dkt. No. 178 at 5-6. Despite two opportunities, Delta fails to address this argument. Dkt. No. 179; Def. Opp. at 5.

Delta exclusively relies on *Scanlan* to argue that pilots have control over when to schedule their military duties and when to take military leave. Def. Opp. at 5. Delta ignores that in *Scanlan,* unlike here, "the airline presented evidence that pilots have a great degree of control over scheduling their military service periods to accommodate their civilian obligations and that the military schedules duty periods in advance and with flexibility." *Scanlan v. American Airlines Group, Inc.,* 102 F.4th 164, 169 (3d Cir. 2024). While the Third Circuit found "most pilots who take military leave lack the ability to control their schedules," the evidence that some pilots had control was the basis for the district court's decertification. *Compare id.* at 171 *with Scanlan*, 795 F.Supp.3d at 677 (citing the Third Circuit to conclude "whether a pilot has control over the timing of their military leave varies"). The *Scanlan* plaintiffs "presented evidence" – primarily from the

plaintiffs – "that [pilots] generally lack control over when they fulfill their military duties and that their requests for schedule changes are frequently denied." *Scanlan*, 102 F. 4th at 169. That evidence was sufficient for "a jury could conclude that—as with pilots who take jury-duty or bereavement leave—most pilots who take military leave lack the ability to control their schedules." *Id.* at 171. Plaintiff Best has presented similar evidence here, which unlike American, Delta fails to rebut.

At the class certification hearing, Mr. Best testified that the military simply asked for servicemember's availability and then set a flight schedule. Transcript of Jan. 17, 2024 Hearing at 47: 22-48:15; *see* Best Dep. (Dkt. 170-2) at 77:16-80:1. Unlike in *Scanlan,* the unrefuted testimony here is that seniority in the military does not "play a role in the creation of a flying schedule." *Id.* at 80: 6-12. And there is no flexibility in determining miliary duties for drill duty. Transcript of Jan. 17, 2024 Hearing at 49:5-12. And "the expectation is that everyone will be at drill." Best Dep. at 89:24-90:2. Mr. Best also testified that based on his experience flying with other units or squadrons, "they do things similarly" and the "biggest difference" is "how much they fly" and "how much they fly on drill weekends." *Id.* at 243:10-245:20. Delta's only witness with knowledge about pilots does not know whether pilots have the ability to choose when to take military leave. Zawislak Dep. at 107:24-108:6. Even if pilots have some control when their military duties occur, that is true for comparable leaves. Dkt. No. 126 at 15 (citing evidence).

8

Delta cites only its prior briefing to assert that there are "similar individual questions" here about pilots ability to control their leave. *Id.* But its prior briefing did not address this issue. *See* Dkt. No. 123 at 13-19; Dkt. No. 170 at 8-15. As Plaintiff previously explained, unlike in *Scanlan,* "there is no evidence" that the "ability to control their leaves varies among the class members." Dkt. No. 178 at 4.

Delta also relies on *Scanlan* to argue that the evidence of duration of *leave* will not be based on common proof and will not yield a common answer. Def. Opp. at 4-5 n.1. *First,* Delta again erroneously conflates military leave with military service. *Compare id. with* Dkt. No. 126 at 12 and *supra* I.B. *Second,* as the Class is defined based on Delta's leaves, Plaintiff's evidence will be based on the leaves in that data. Dkt. No. 126 at 4. *Finally,* unlike what the *Scanlan* court considered, in the Eleventh Circuit, duration under USERRA § 4316(b) is measured by comparing the longest period of the comparator leave to the period of military leave. Dkt. No. 178 at 2-3; Dkt. 126 at 16. Thus, the basis for the *Scanlan* court's decision is inapplicable and inconsistent with binding Eleventh Circuit law.

### B.    Plaintiff Best's Claims Are Typical of the Class.

Delta argues that Best's claims are not typical of the claims for either Class based Delta' assertion of "violations of notice requirements under USERRA and Delta's leave policies." Def. Opp. at 3. This argument misapplies the standards on typicality and attempts to graft a notice standard onto USERRA that does not exist. Dkt. No. 171 at 2-3. Delta has still not identified *"any* specific instances of Best's

short-term military leave in its data that it asserts would not be compensable due to unreasonably short notice." *Id.* at 4. Even if Delta could identify some of Best's leaves that were not protected by USERRA because he did not provide sufficient advance notice, those leaves would then simply not be subject to compensation in this lawsuit. *Id.* at 4-5. Delta does not suggest that Best has *no* USERRA-protected *leaves*. *Id.* at 4. So long as Best has a claim for a single USERRA-protected leave, his claims are typical. *Id.* While Delta asserts this is a defense unique to Best, Delta conceded that this "defense" may also apply to other class members. *Id.* at 4-5. Indeed, based on the evidence (as constrained by the discovery limitations), Best's practice in scheduling leave appears to be consistent with those of other pilots. *Id.* at 5. That makes his claims typical of the Damages Class.

Finally, Delta's argument on these issues simply do not apply to the claims of the Injunction Class because they only address whether specific instances of prior leaves would be protected by USERRA.

### C.    Plaintiff Best is a More Than Adequate Class Representative.

Delta argues that Best is inadequate based on purported "violations of notice requirements" which it inexplicably contends "creates conflicts." Def. Opp. at 3. But this was *not* the basis of its prior arguments about Best's adequacy. *See* Dkt. No. 170 at 6-7. Nor is it a disqualifying conflict as a conflict requires the challenged conduct – i.e. failure to pay short-term military leave – to have "benefited [some] members of the class" or that requiring Delta to pay for short-

term military leave would harm some class members. Dkt. No. 171 at 6-7. No Damages Class members "benefited from Delta's failure to pay them for short-term military leave" and no Injunction Class members "would be harmed by requiring Delta to do so." *Id.* at 6.

## III.   The Injunction Class Satisfies the Requirements of Rule 23(b)(2).

Delta does not dispute that Rule 23(b)(2) has two requirements: (1) the party opposing the class (i.e. Delta) has acted or refused to act on grounds that apply generally to the class and (2) final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole. *See* Pl. Mem. at 15. Delta does <u>not</u> suggest that either of these requirements are lacking. Def. Opp. at 9-14. Delta does not dispute that it applies a uniform written policy to every servicemember pilot by which it does not pay for military leave. *See* Pl. Mem. at 16.

### A.   The Complaint Adequately Describes the Injunctive & Declaratory Relief.

Delta argues that the Complaint requests an impermissible "follow-the-law" injunction. Def. Opp. at 14. But Delta's own case explains that at class certification plaintiff must merely describe how the remedy "might satisfy Rule 65(d)" so the court could "conceive" of an appropriate injunction. *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 605 n.4 (10th Cir. 2008). So long as the injunction is "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders," the injunction is permissible. *United States v. Askins*

11

*& Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1361–62 (11th Cir. 2019). Delta attempts to distinguish *Davis v. Mar-Jac Poultry, LLC*, No. 6:18-cv-1433-LSC, 2024 WL 218510 (N.D. Ala. Jan. 19, 2024) by suggesting that there was greater specificity for the injunction. Def. Opp. at 12. But the *Davis* court described the relief as "an injunction or series of injunctions restructuring and restricting [the employer's employment] practices" that would put class members to seek "on equal footing." *Davis,* 2024 WL 218510, at *13. Here, the injunctive relief would enjoin a *written policy* whereby Delta categorically refused to provide paid short-term military leave while providing paid leave for other comparably short-term leaves. For example, if the court concluded that jury duty leave was comparable to short-term military leave, the injunction would enjoin Delta from categorically refusing to pay pilots for military leave that was under 30 days and to require Delta to provide paid for pilots who take military leave for fewer than 30 consecutive dates on the same basis as Delta provides paid leave for jury duty. That would put pilots taking short-term military leave "on equal footing" as pilots taking a comparable non-military leave. It is specific and is not an "obey-the-law" injunction.

### B. The Injunction Class Properly Seeks Injunctive & Declaratory Relief.

Delta characterizes the requested relief as "requiring Delta to pay an indeterminate amount of damages to class members going forward." Def. Opp. at

12

10. While the declaration or injunction would require Delta to provide pay protected leave in the future so long as Delta provides pay protection for a comparable leave, Delta erroneously assumes that any order requiring payment of money is necessarily damages. *Id.* That argument misunderstands the difference between damages and injunctive relief. [2]

Damages is a remedy for "*past* harm [that] occurred" whereas an injunction generally is a remedy to prevent "a *future* injury." *Sierra v. City of Hallandale Beach, Fla.,* 996 F.3d 1110, 1113 (11th Cir. 2021); *Checker Cab Operators, Inc. v. Miami–Dade Cnty.,* 899 F.3d 908, 916 (11th Cir. 2018) ("Unlike claims for declaratory and injunctive relief, which are inherently prospective in nature, 'a

---

[2] In footnote, Delta asserts that only Plaintiff's motion seeks declaratory relief. Def. Mem. at 10 n.3. But the Complaint requests declaratory relief. SAC at Prayer for Relief ¶ A, B. Delta also argues that claims that seek declaratory relief for which monetary relief follows must be certified under Rule 23(b)(3). Def. Mem. at n.3 In rejecting a similar argument, the Seventh Circuit explained that "is silly." *Johnson v. Meriter Health Servs. Emp. Ret. Plan,* 702 F.3d 364, 369 (7th Cir. 2012) (affirming Ruel 23(b)(2) certification after finding that "a declaration is a permissible prelude" to "monetary relief"). Courts in this Circuit have found the same. *Henderson v. Emory University,* 2018 WL 6332343, at *10 (N.D. Ga. 2018) ("*Dukes* does not require certification under Rule 23(b)(3) when monetary damages are incidental to injunctive relief."); *Hoak v. Plan Admn'r of the Plans of NCR Corp.,* No. 1:15-cv-3983-AT, 2017 WL 11709989, at *11 (N.D. Ga. Sept. 27, 2017) (certifying claims under Rule 23(b)(2) where the "ultimate remedy" was "declaratory relief entitling the class members to larger payments."); *In re Brannan*, 485 B.R. 443, 459 (Bkrtcy. S.D. Ala. 2013) (same). By contrast, in the cases cited by Delta, the relief spought a remedy only for *past conduct* constituting "individualized claims for money." *Cox v. Cmty. Loans of Am., Inc.,* No. 4:11-cv-177 (CDL), 2014 WL 1216511, at *13 (M.D. Ga. Mar. 24, 2014); *see Jacobs v. Quicken Loans, Inc.,* No. 15-81386-CIV-MARRA, 2017 WL 4838567, at *4 (S.D. Fla. Oct. 19, 2017) (explaining the claim "from one telephone call").

claim for money damages looks back in time and is intended to redress a past injury.'"). *S.E.C. v. Graham,* 823 F.3d 1357, 1361 (11th Cir. 2016) (distinguishing injunctions which "typically look forward in time" and do not typically provide relief for past injuries). As these cases explain, where the relief seeks to *prevent a future injury*, rather than remedy a past harm, it is properly considered injunctive. *See id.* Here, the relief is designed to prevent Delta from causing future injury by continuing to fail to properly provide paid short-term military leave.

It is common for plaintiffs to seek both damages caused by a defendant's past conduct *and also* equitable relief to prevent future conduct:

> Frequently, a plaintiff will seek both forms of relief in the same cause of action when challenging a defendant's course of conduct that began before the initiation of the lawsuit and is likely to continue in the future. The plaintiff requests money damages to redress injuries caused by the defendant's past conduct and seeks equitable relief to prevent the defendant's future conduct from causing future injury.

*Adler v. Duval Cnty. School Bd.,* 112 F.3d 1475, 1477 (11th Cir. 1997); *see F.T.C. v. Leshin,* 719 F.3d 1227, 1232 (11th Cir. 2013) (explaining that "[t]he most common combination of equitable and legal remedies" is "an injunction that prevents future harm along with an award of damages that compensates for past harm."). For example, a court may order "both specific performance of a contract along with damages resulting from the defendant's delay in performing his obligations under that contract." *Id.* "[T]he fact that th[e] relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Amara v.*

14

*CIGNA Corp.*, 563 U.S. 421, 441 (2011) (concluding "injunctions requir[ing] the [defendant] to pay [class members] money owed them" was appropriate equitable relief). Quite simply, the entire premise of Delta's argument is simply erroneous.

### C.    "Hybrid Certification" is Permissible and Appropriate.

Delta does not dispute that hybrid certification – whereby a claim is certified under *both* (b)(2) for injunctive and declaratory relief *and* a (b)(3) for the monetary damages – is permissible. *Compare* Pl. Mem. at 14 *with* Def. Opp. at 11. In certifying a hybrid class, another court in this Circuit explained that "*Wal-Mart Stores* … did not bar requests … for certification of both a Rule (b)(2) injunctive relief class and a separate Rule (b)(3) damages class." *Doe v. MG Freesites, LTD*, No. 7:21-cv-00220-LSC, 2023 WL 8792153, at *18 (N.D. Ala. Dec. 19, 2023); *see* 2 Newberg & Rubenstein on Class Actions § 4:38 ("Certification of a hybrid action is often thought to be the best of both worlds" and "compl[ies] with *Wal-Mart*'s admonition against adjudicating individual damage claims in a (b)(2) class action."). Delta's own case recognizes that hybrid certification can be appropriate, but denied Rule 23(b)(2) certification only because "there [was] no future activity" to enjoin. *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *10 (M.D. Fla. Apr. 27, 2015). In the only other case cited by Delta on this issue, plaintiffs did not seek hybrid certification, but monetary relief for amounts "that should have been paid" in the past (i.e. damages). *Bartholomew v. Lowe's Home Ctrs., LLC*, No. 2:19-cv-695-JLB-MRM, 2021 WL 3602719, at *5

(M.D. Fla. Aug. 13, 2021). At most, Delta's cases only hold that Rule 23(b)(2) certification does not apply where there is no future conduct to enjoin.

The Eleventh Circuit has recognized that a plaintiff can seek both damages to remedy past conduct and simultaneously seek to injunctive relief to prevent future harm. *Supra* III.B. As Mr. Best is a current servicemember and Delta pilot who has been and will be harmed by Delta's conduct, he is entitled to both forms of relief, and there is no reason why he cannot seek both forms of relief on behalf of himself and two separate classes.[3]

## IV.   Both Classes Satisfy the Requirements of Rule 23(b)(3).

Repeating its prior arguments, Delta only challenges whether common issues will predominate for the Damages Class. Def. Opp. at 7-9. Delta does not challenge superiority for either Class. *Id.*

### A.   The Damages Class Satisfies Rule 23(b)(3).

Delta primarily relies on its prior briefing to argue that common questions will not predominate for the claims of the Damages Class. Def. Opp. at 7. Delta reiterates two arguments: (1) Plaintiff has not presented a method to calculate damages on a class-wide basis; and (2) there is no objective way to identify who is in the Class based on Delta's records. *Id.* at 7-8.

---

[3] Indeed, the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)).

*First*, Plaintiff has explained how damages would be calculated on a class-wide basis and the evidence on which the damage model would rely. Dkt. No. 126 at 17-21; Dkt. No. 171 at 8-14. Delta does not address the data, but instead cites *Brill v. AK Steel Corp.* to suggest that because the plaintiff there offered "weekly work schedules," and "itemized pay sheets" and also "information detailing pay for military work," that the same evidence is required here and that calculation of each class members damages somehow undermines predominance. Def. Opp. at 8. But Delta ignores that similar types of evidence are available here. Delta has produced data about military leaves. Dkt. No. 118 at 20; Dkt. No. 126 at 20. Delta's own witness testified that Delta maintains records of pilots scheduled before any modifications due to military leave. Dkt. No. 126 at 20. Delta's expert conceded that service records from the DOD (which Plaintiff has been precluded from seeking) would allow a comparison of service and calculation of damages. Dkt. No. 118 at 23-24. Such damage calculations do not suggest that individualized evidence is required. *Huntsman v. Southwest Airlines Co.*, No. 19-cv-00083-PJH, 2021 WL 391300 at *13 (N.D. Cal. Feb. 3, 2021) (rejecting a similar argument in certifying a claim under USERRA § 4316(b)); *In re Takata Airbag Prod. Liab. Litig.,* 348 F.R.D. 500, 525 (S.D. Fla. Feb. 26, 2025) (rejecting similar argument). Individualized damages issues only predominate if "computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable" or if "significant individualized questions go[ ] to liability."

*Green-Cooper v. Brinker Int'l, Inc.,* 73 F.4th 883, 893 (11th Cir. 2023) (affirming class certification under Rule 23(b)(3) after rejecting similar argument). Thus, this argument does not undermine predominance.

*Second,* Delta argues that its own data is insufficient to establish when "military *leave* begins and ends." Def. Opp. at 8.[4] Delta really contests whether their own data is sufficient evidence of USERRA-protected "military service." *Id.* at 9. But the issue is *leave,* not *service*, just a sick leave records will show when a pilot was absent due to sickness, but not how long a pilot was ill (e.g. on days when not scheduled to work). So the relevant comparison are *leave days*. Even if service dates are relevant, Delta fails to explain why DOD records would not be sufficient. *See id.* More importantly, Delta's own data constitutes admissible evidence about the military leaves: "Courts have found that the business-records exception to the hearsay rule not only applies to the record itself, but also to

---

[4] Delta assumes that if the DOD service records do not identically match its leave records, then that undermines leave records. Def. Opp at 8-9. But USERRA is "clear that a service obligation does not necessarily begin on the first day of orders." *Ashman v. Winnebago Cnty. Sheriff's Dep't,* No. 11 C 50388, 2015 WL 641784, at *4 (N.D. Ill. Feb. 13, 2015) (finding employee was absent by reason of service where he was absent from 6 p.m. to 6 a.m. shift at civilian workplace, even though employee would have had enough time after shift to timely arrive at military unit by 8 a.m. because employee would not have been fit for military duty had he worked the shift). USERRA protects an absence from work when the service dates are changed or the service is cancelled. 20 C.F.R. § 1002.73 (explaining USERRA protects leave where the military duty is then cancelled); 20 C.F.R. § 1002.74 (same when "the beginning date of the service is delayed"). As such, Delta's own leave records contemporaneously made are the best of evidence of the USERRA protected leaves at issue.

18

statements contained in the record, if both the recorder of the statement and the source of the statement were acting in the course of a regularly conducted business activity." *Braggs v. Dunn,* No. 2:14cv601-MHT, 2017 WL 426875, at *3 (M.D. Ala. Jan. 31, 2017) (citing *United States v. Turner*, 189 F.3d 712, 719-20 (8th Cir. 1999)); *Allision v. Dolich*, 148 F.Supp.3d 1142, 1145 (D. Or. 2015) (same). The Eighth Circuit explained, "when the source of information [e.g. an employee] and the recorder of that information [e.g. a supervisor] were acting in the regular course of the organization's business," then these records are admissible against defendant. *Turner*, 189 F.3d at 719-720. Courts have rejected arguments by defendants in class actions that their "payroll records cannot be used as common evidence because" the "timesheets—which their payroll records were based on— were inaccurate." *Williams v. Sweet Home Healthcare, LLC,* 325 F.R.D. 113, 129 (E.D. Pa. 2018) (rejecting argument that defendant "should not be bound by inaccurate timesheets even though it has already recorded the hours in those timesheets and paid the workers for those hours."); *Talarico v. Pub. P'ships, LLC,* No. 17-2165, 2022 WL 1524109, at *9 (E.D. Pa. May 12, 2022) (reaching similar conclusion) Here, Delta pilots are required to notify Delta about "all dates when they are performing military duties." Zawislak Dep. at 175:15-19. Thus, Delta's own records are alone sufficient evidence of short-term military leaves.

19

**B.**      **The Injunction Class Satisfies Rule 23(b)(3).**

Delta's arguments on Rule 23(b)(3) do not address the Injunction Class. [5]

*First,* as the Injunction Class does not seek any damages, there is no need for a damages model. *Second*, Delta's argument that there is "no 'objective' way to identify who is in the class" based on Delta's military leave records also does not apply to the Injunction Class because the Injunction Class is defined as Delta pilots who are also current members of the uniformed services. *Compare id. with* SAC ¶ 13. Thus, the Injunction Class meets the requirements of Rule 23(b)(3).

## CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Class Certification should be granted.

---

[5] If the Injunction Class cannot be certified under Rule 23(b)(2), as Delta's own case explains, the claims should be evaluated under Rule 23(b)(3). *Cox,* 2014 WL 1216511, at *19 (certifying claim under Rule 23(b)(3) after concluding Rule 23(b)(2) was not met).

Dated: February 13, 2026              Respectfully submitted,


                                      /s/ R. Joseph Barton
                                      R. Joseph Barton*
                                      THE BARTON FIRM LLP
                                      1633 Connecticut Ave., NW
                                      Suite 200
                                      Washington D.C. 20009
                                      Tel: (202) 734-7046
                                      Email: jbarton@thebartonfirm.com

                                      /s/ Stephen J. Anderson (by permission)
                                      Stephen J. Anderson
                                      Georgia Bar No. 018325
                                      Kenneth S. Nugent, P.C.
                                      4227 Pleasant Hill Road
                                      Building 11, Suite 300
                                      Duluth GA 30096
                                      Tel: (770) 820-0893
                                      Email: sanderson@attorneykennugent.com

                                      Michael J. Scimone*
                                      OUTTEN & GOLDEN LLP
                                      685 Third Avenue, 25th Floor
                                      New York, New York 10017
                                      Tel: (212) 245-1000
                                      Email: mscimone@outtengolden.com

                                      Peter Romer-Friedman*
                                      PETER ROMER-FRIEDMAN LAW PLLC
                                      1629 K Street, NW, Suite 300
                                      Washington, DC 20006
                                      Tel: (202) 355-6364
                                      Email: peter@prf-law.com

21

Robert Friedman*
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, D.C. 20006
Tel: (202) 888-1741
Email: peter@guptawessler.com
Email: robert@guptawessler.com

Matthew Z. Crotty*
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: matt@crottyandson.com

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G. JARRARD
LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Email: Tjarrard@att.net

*Attorneys for Plaintiffs Haley & Best*

*Admitted *pro hac vice*

Crystal L. Matter*
Matter Law, APC
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Tel: 916-735-7495
Email: crystal@matterlawapc.com

22

Alexander Cyclone Covey
Georgia Bar. No 1907417
Kneupper & Covey PC
11720 Amber Park Dr
Ste 160 PMB 1271
Alpharetta, GA 30009
Tel: 678-928-6806
Fax: 855-596-3707
Email: cyclone@kneuppercovey.com

*Attorneys for Plaintiffs Reep & Best*

\*Admitted *pro hac vice*

**Certificate of Compliance Pursuant to L.R. 7.1(D)**

The undersigned counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in L.R. 5.1(C).[6]

/s/ R. Joseph Barton
R. JOSEPH BARTON
THE BARTON FIRM LLP
1633 Connecticut Ave. NW
Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
Email: jbarton@thebartonfirm.com

---

[6] The operative local rules require that "counsel must certify that the brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B)." L.R. 7.1(D). This appears to be an error, as the font and point selections approved by the Court are set forth in Local Rule 5.1(C). Plaintiff has thus certified compliance with that provision of the Local Rules.

24

## CERTIFICATE OF SERVICE

This is to certify that this 13th day of February, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically serve notification of such filing to all counsel of record.

*/s/ R. Joseph Barton*
R. Joseph Barton

25